J-S15006-21

2021 PA Super 154

| | | |
|---|---|---|
| THOMAS K. MOYER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALAINA J. LEONE | : | No. 1231 WDA 2020 |

Appeal from the Order Entered October 16, 2020
In the Court of Common Pleas of Allegheny County Family Court at
No(s):  FD 19-08911-017

BEFORE:   LAZARUS, J., MURRAY, J., and COLINS, J.*

OPINION BY LAZARUS, J.:                    **FILED:  August 4, 2021**

Thomas K. Moyer (Father) appeals from the order, entered in the Court of Common Pleas of Allegheny County, Family Division, denying his ninth Petition for Special Relief and awarding Alaina J. Leone (Mother) $3,200 in counsel fees.  Upon review, we reverse and remand for further proceedings.

The trial court summarized the history of this case as follows:

Th[is matter] commenced on September 27, 2019, when Father filed a Complaint for Primary Custody of the minor child, R.A.L. (DOB: [12/2018]).  **Approximately one month later, Father submitted a Petition for Interim Custody and for Special Relief in which he alleged, *inter alia*, that Mother was withholding custody of the minor child in retaliation for initiating his custody action.**  Mother submitted a [response thereto] in which she alleged, *inter alia*, that Father had frequent violent, angry outbursts when they lived together and that[,] combined with the child's medical condition, she did not think Father's proposed interim custody schedule was appropriate at the time.  By two [o]rders [] dated October 25, 2019, th[e c]ourt

_____

* Retired Senior Judge assigned to the Superior Court.

denied Father's Petition and granted the portion of Mother's [r]esponse that requested a one-hour interim relief hearing with a Hearing Officer.

On October 31, 2019, Mother filed her Counter-Complaint for [Primary Physical and Sole Legal] Custody. Shortly thereafter, on November 7, 2019, Hearing Officer Laura Valles issued her Interim Relief Order of Court—Custody, in which, *inter alia*, Mother's status quo of primary physical custody continued[,] with periods of supervised visits for Father on Sundays from 10 a.m. [to] 6 p.m.

**Approximately six weeks later, Father submitted a**[**nother**] **Petition for Special Relief in which he requested the November 7, 2019 Interim Relief Order** [] **be vacated as it related to the supervision of his visits,** which he alleged was unnecessary, or, in the alternative, required Mother to provide all of the transportation to effectuate the visits. By [o]rder [] dated December 20, 2019, th[e c]ourt denied Father's Petition and ordered the parties to mutually agree on a halfway point for exchanges.

**A month later, Father submitted his third Petition for Special Relief in which he requested an expedited conciliation with th**[**e c**]**ourt after the parties' mediation had failed to result in an agreement.** Father averred that his continued limited custody was prejudicial and that he should not have to wait any longer for relief. By [o]rder [] dated January 24, 2020, th[e c]ourt, *inter alia*, granted Father's Petition for Special Relief and scheduled the parties for a judicial conciliation to occur on March 11, 2020. [Due to a scheduling conflict for Mother's counsel, by order dated February 24, 2020, the court rescheduled the judicial conciliation for March 5, 2020.]

**Another month later, Father submitted an Emergency Petition for Special Relief in which he alleged Mother was not following the January 24, 2020** [**order**] **as it related to the parties' communication.** By [order] dated February 24, 2020, th[e c]ourt granted Father's Petition and ordered that all non-emergency communication take place on the Our Family Wizard ("OFW") application and that Mother was to unblock Father's phone numbers.

Following the parties' judicial conciliation, th[e c]ourt issued an [order] dated March 6, 2020, requiring the parties to participate

- 2 -

in a full custody evaluation with the [c]ourt-appointed psychological evaluator.

In April 2020, Mother submitted a Protection from Abuse [("PFA")] Petition and Temporary Order against Father, alleging that he had sent her emotionally abusive emails and text messages. The PFA Petition was denied by the Honorable Kathleen R. Mulligan by [order] dated April 7, 2020.

**A few weeks later, Father submitted a fifth Petition for Special Relief. In this Petition, Father averred that he had suspended his visits with the child due to the COVID-19 pandemic and the child's health issues. As a result, Father alleged that he had not seen the child in a month and was requesting video calls take place daily at 6:30 p.m. until such time as Father resumed his physical custody visits.** Mother submitted her Response to Father's Petition for Special Relief in which she averred she had made multiple attempts to facilitate video calls between the child and Father and that Father had failed to respond. At any rate, Mother was agreeable to video calls for Father, but at 6:45 a.m. By two [orders] dated April 27, 2020, th[e c]ourt denied Father's Petition and granted Mother's Response.

Almost one month later, Father submitted a Petition for Reconsideration in which he alleged Mother had concocted a forged exhibit included with her previous Response to Father's Petition for Special Relief regarding video calls. Father also alleged that Mother had engaged in a campaign of alienation against Father. As a result of Mother's lies and behavior, Father requested the video calls change from 6:45 a.m. to 6:30 p.m. and that he be awarded $500 in counsel fees. Mother submitted a Response to Father's Petition for Reconsideration in which she denied the allegations set forth in his Petition and requested an award of $800 in counsel fees as a result of having to respond to the meritless pleading. By two [orders] dated May 21, 2020, th[e c]ourt denied Father's Petition and granted the part of Mother's Response seeking denial of Father's Petition.

**A few weeks later, Father submitted his sixth Petition for Special Relief and a Petition for Contempt. In the Petition for Special Relief, Father alleged a variety of inappropriate behaviors by Mother, including hacking into his social media account and making derogatory posts, as well as her continued verbal assaults over OFW.** Father averred [that]

because of Mother's behaviors, there was no basis to continue to require his visits to be supervised pending the trial that was scheduled for September 2020. Father also requested $1,000 in counsel fees pursuant to 42 Pa.C.S.A. § 2503(6) for Mother's dilatory, obdurate, and vexatious behavior. Mother submitted a Response to Father's Petition for Special Relief in which she denied the allegations set forth in Father's Petition and alleged that Father concocted the derogatory social media posts as a way to frame Mother. Due to Father's frivolous Petition, Mother was requesting her own $1,600 in counsel fees, as well as a hearing on the fees requested by Father.

Father submitted a Reply to Answer for Special Relief and New Matter in which he denied the allegation set forth in Mother's Response and requested the ability to issue a subpoena to Facebook to prove his point. Mother submitted a Response to Father's New Matter in which she continued to deny any wrongdoing with Father's social media and requested Father's Reply be denied.

By four [orders] dated June 18, 2020, th[e c]ourt granted in part and denied in part Father's Petition, including denying his request to eliminate supervision and his request for counsel fees, denied Mother's Response to the Petition, denied Father's Reply and New Matter, and granted Mother's Response to the New Matter.

In the Petition for Contempt, Father alleged that Mother was in violation of th[e c]ourt's February 24, 2020 [order] as it related to the usage of OFW for communication between the parties, and he requested a hearing on the matter. Mother did not submit a response to this Petition. By [order] dated June 18, 2020, the issue of contempt was consolidated with the custody trial.

On July 7, 2020, an administrative [order] was issued dismissing Father's custody complaint for his failure to pay psychological evaluation fees within the prescribed time period. Father submitted a Petition for Reinstatement of Custody Complaint, which th[e c]ourt granted by [order] dated July 20, 2020.

At the same time as Father's Reinstatement, Mother submitted an Emergency Petition seeking to prevent Father from transporting the child to and from Pittsburgh during his visit, as she did not think sitting in a car seat for four hours total would be good for the child given her spinal condition. Father submitted an Answer to Mother's Emergency Petition in which he argued there was no

- 4 -

basis to conclude the child riding in the car to and from Pittsburgh would endanger her, as Mother had previously transported the child all over northwestern Pennsylvania. By two [orders] dated July 17, 2020, th[e c]ourt denied Mother's Petition and granted Father's Answer.

**Another month later, Father submitted his seventh Petition for Special Relief in which he alleged, *inter alia*, that Mother had filed a [PFA Petition] in Erie County that was ultimately dismissed after a hearing, and that because no abuse was found to have occurred in that instance, the issue of abuse in Allegheny County was *res judicata*.**[1] Father argued that he should not have to wait for trial to have expanded custody of the child, and requested th[e c]ourt award him with custody every other weekend. Mother submitted a Response to Father's Petition for Special Relief and denied that the dismissal of her Erie County PFA meant the issue of abuse was resolved. Mother also argued that modifying custody without a hearing would violate the holding set forth in *E.B. v. D.B.*, [209 A.3d 451 (Pa. Super. 2019),[2]] and she requested $1,600 in counsel fees for having to respond to Father's Petition. By two [orders] dated August 24, 2020, th[e c]ourt denied all of Father's Petition except for the request to address any sanctions against Mother at the upcoming trial[,] and denied Mother's Response.

Around this same time, Mother presented a Motion for Continuance of the upcoming trial. Mother alleged that because Father had failed to timely pay the psychological evaluation fees, the evaluations had not yet been completed[,] and, therefore, the evaluator's report would not be available for trial. Father

---

[1] *Res judicata* "bars the re[-]litigation of issues that either were raised or could have been raised in [a] prior proceeding." *Khalil v. Cole*, 240 A.3d 996, 1004 (Pa. Super. 2020). "[T]he doctrine of *res judicata* holds that a final[,] valid judgment upon the merits by a court of competent jurisdiction bars any future suit between the same parties or their privies on the same cause of action." *Dempsey v. Cessna Aircraft Co.*, 653 A.2d 679, 680-81 (Pa. Super 1995) (en banc).

[2] *See E.B. v. D.B.*, *supra* at 446 (trial court abused discretion by altering status quo without notice and opportunity to be heard after full preparation, without any apparent emergency or change in circumstances, without explanation as to why it was in child's best interest, and without considering effect of eliminating years of detailed prior orders in exchange for order not specifically tailored to parties' and child's needs).

submitted an Answer to Motion for Continuance in which he argued that th[e c]ourt did not need psychological evaluations to make a custody determination, and that because Father had been waiting a year for trial[,] that th[e c]ourt absolutely could not delay the matter any further, as Father's due process rights have already been infringed upon with the delay caused by the COVID-19 pandemic.  In the alternative, Father proposed that Mother pay the fees, and that th[e c]ourt hold one day of trial and take testimony from the parties and issue an interim order while psychological evaluations take place thereafter.  Mother submitted a Response to Father's Answer in which she argued the importance of psychological evaluations in this case and pointed out that any delay [] has been entirely the fault of Father.  By two [orders] dated August 28, 2020, th[e c]ourt granted Mother's Motion for Continuance and denied Father's Response.  [Father paid his psychological evaluation fee the same day, and Mother paid her fee on October 2, 2020.]

**Approximately two weeks later, Father submitted his eighth Petition for Special Relief seeking to change his custody supervisor from his sister to his cousin.**  Mother submitted a Response to Father's Petition for Special Relief in which she explained that she denied Father's request to change the supervisor because she did not know his cousin and did not feel comfortable that his cousin could attend to the child's needs. By two [orders] dated September 10, 2020, th[e c]ourt granted Father's Petition and denied Mother's Response.

**About one month later, Father submitted his ninth Petition for Special Relief that raised several tangential issues related to Mother's behavior and his continued belief that supervised custody was unnecessary**, which justified another request to modify custody pending the trial because he simply had waited long enough.  In her Response to Father's Petition for Special Relief, Mother explained that the trial being delayed from September 2020 to sometime in February 2021 was the direct result of Father's refusal to pay the psychological evaluation fee, and that this latest pleading was his fifth request to modify custody in motions court.  Mother argued that Father's Petition was repetitive, baseless, obdurate, and vexatious, and, as a result, requested $1,600 in counsel fees.  By two [orders] dated October 16, 2020, th[e c]ourt denied Father's Petition and granted Mother's Response.

Shortly thereafter, Father submitted a Motion for Reconsideration in which he argued that he should not be required to pay Mother $1,600 in counsel fees because his main reason for his previous Petition for Special Relief was due to Mother's repeated violations of the outstanding [orders]. Father went on to argue that th[e c]ourt lacked authorization under 42 Pa.C.S.A. §2503(7) to award counsel fees absent a finding of dilatory, obdurate, or vexatious conduct. Father also argued th[e c]ourt lacked justification under 23 Pa.C.S.A. § 5339 because nearly all of his previous petitions were about Mother's behavior and her violations of various court orders. Father requested the issue of counsel fees be consolidated with trial.

Mother submitted a Response to Father's Motion for Reconsideration in which she argued that[,] despite Father's assertions that his petitions were about Mother's violation of the court orders, a review of the docket showed redundant Petitions for Special Relief, as opposed to Petitions for Contempt, which would have been the proper pleading. By continuously submitting inappropriate and rejected Petitions for Special Relief that made vague and unsupported allegations against her[,] and which requested modifications of the current order of court, Mother argued that Father caused her financial harm by forcing her to defend herself every few weeks from improper pleadings. As a result, Mother requested another $1,600 in counsel fees. By two [orders] dated November 3, 2020, th[e c]ourt denied Father's Motion and granted in part and denied in part Mother's Response.

Trial Court Opinion, 2/16/21, at 1-11 (emphasis added).[3]

Father timely filed a notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. He raises the following issue for our review:

Whether the [t]rial [c]ourt committed an abuse of discretion in awarding counsel fees to Mother without identifying the reason for the award of counsel fees; without making any findings as to the reason for the [] counsel fees awarded; without making any

---

[3] On February 12, 2021, "after conciliation at which both parties were represented by counsel," the court ordered that Father's custodial periods shall continue as previously ordered with the modification that they be unsupervised. *See* Order, 2/12/21.

findings regarding sanctionable conduct; and without any determination of Father's ability to pay the awarded counsel fees.

Brief of Appellant, at 4.

Father argues that the trial court abused its discretion in awarding Mother counsel fees. "Our standard of review of an award of counsel fees is well-settled: we will not disturb a trial court's determination absent an abuse of discretion. A trial court has abused its discretion if it failed to follow proper legal principles or misapplied the law." **Dong Yuan Chen v. Saidi**, 100 A.3d 587, 591 (Pa. Super. 2014) (internal citations omitted).

Here, the trial court relied on section 5339 of the Child Custody Act[4] and section 2503 of the Judicial Code[5] in awarding Mother counsel fees. **See** Trial Court Opinion, 2/16/21, at 13. Section 2503 entitles a litigant to reasonable counsel fees where the conduct of another party was dilatory, obdurate, vexatious, arbitrary, or in bad faith. **See** 42 Pa.C.S.A. §§ 2503(7), (9). "The distinction between section 5339 of the Domestic Relations Code and section 2503 of the Judicial Code is simply the addition of the word 'repetitive.'" **Dong Yuan Chen**, **supra** at 591; **see also** 23 Pa.C.S.A. § 5339 (court may award counsel fees to party if court finds conduct of another party was obdurate, vexatious, **repetitive**, or in bad faith) (emphasis added).[6] We are mindful that:

_____

[4] **See** 23 Pa.C.S.A. § 5339.

[5] **See** 42 Pa.C.S.A. § 2503.

[6] We have previously adopted the following definitions in this context:

By imposing [] strict definitional guidelines, [section 2503] serves not to punish all those who initiate legal actions which are not ultimately successful or which may seek to develop novel theories in the law. Such a rule would have an unnecessarily chilling effect on the right to bring suit for real legal harms suffered. Rather, [section 2503] focuses attention on the conduct of the party from whom attorney's fees are sought and on the **relative merits of that party's claims**.

*Thunberg v. Strause*, 682 A.2d 295, 300 (Pa. 1996) (emphasis added).

Moreover, "the best interest of a child is the foundation of the child custody law, and that includes section 5339. . . . [G]reat emphasis must be placed on the best interest of the child based on a consideration of all factors that legitimately affect the child's physical, intellectual, moral, and spiritual well-being." *Dong Yuan Chen*, *supra* at 592.

Here, the trial court specifically found that Father's conduct was "repetitive, vexatious, and in bad faith." Trial Court Opinion, 2/16/21, at 14. However, because the trial court has not articulated specific facts as to why

_____

- "Arbitrary"- based on random or convenient selection or choice rather than on reason or nature.

- "Vexatious"- without sufficient grounds in either law or fact and for the sole purpose of causing annoyance.

- "In bad faith"- for purposes of fraud, dishonesty, or corruption.

- "Obdurate"- stubbornly persistent in wrongdoing.

- "Dilatory"- lack of diligence that delays proceedings unnecessarily and causes additional legal work.

- "Repetitive"- repeated many times in a way that is unpleasant.

*See In re Estate of Burger*, 852 A.2d 385, 391 (Pa. Super. 2004); *Dong Yuan Chen*, *supra* at 591.

Father's petitions were repetitive, vexatious, or in bad faith, and our independent review indicates that the trial court granted the majority of Father's requested remedies, we are constrained to vacate the award of counsel fees to Mother and remand for a hearing to ascertain whether Father's conduct was, as a matter of law, repetitive, vexatious, or in bad faith, and, if so, determine a reasonable award of counsel fees to Mother.

This Court first addressed an award of counsel fees for "repetitive" behavior in *Dong Yuan Chen v. Saidi*, *supra*. In that case, the trial court relied on section 5339 to award counsel fees to Wife based on Husband's filing of "repetitive" petitions to modify custody; Husband filed seven petitions to modify custody in a seven-year span, and the trial court granted only his fourth petition in part.[7] In reversing the award of counsel fees, this Court

_____

[7] In *Dong Yuan Chen*, *supra*, we stated:

> The various petitions, filed typically at least one year apart from each other, involved a range of issues. The first petition for modification was filed on February 7, 2007, seeking primary custody. The second petition was filed on February 19, 2008, seeking a modification of the school-holiday and summer-break schedule. In the third petition, filed on May 26, 2009, Father sought to amend the school-year custody schedule, seeking custody every other Friday night. In his fourth petition, filed on April 26, 2010, Father requested an increase in the summer shared custody schedule, from two weeks of summer vacation time to four weeks. The fifth petition was filed on April 5, 2011, seeking modification of the school-year schedule. The sixth petition was filed on December 5, 2011, seeking to travel internationally with the child. Lastly, the seventh petition was filed on July 5, 2012, and in that petition, Father sought, again, to modify the school-year schedule. . . . Father's second petition

determined that Husband's behavior did not rise to the level of "repetitive"

within the meaning of section 5339.  We reasoned as follows:

> Given the fact that Husband filed the seven petitions over as many years, and in light of the fact that **each petition sought distinct relief pertaining to a variety of legitimate issues that typically arise in a custody matter**, we cannot conclude that Husband's actions rose to the level of "repetitive" within the meaning of section 5339.  Furthermore, **we cannot say that each of the petitions was without relative merit**. Additionally, **there is no indication that any of these petitions affected the child's best interests**.  We conclude, therefore, that the court's award of attorneys' fees under section 5339 was unwarranted and an abuse of discretion in this case.

*Id.* at 593 (emphasis added).

Here, although Father filed petitions for special relief more frequently

than in ***Dong Yuan Chen***, like that case, each petition sought distinct relief

pertaining to a variety of legitimate issues.[8]  Moreover, where the trial court

_____

> was resolved by an agreed order[,] . . . and his fourth petition, filed April 26, 2010, was granted in part.

*Id.* at 592-93.

[8] In his first Petition, filed October 2019, Father sought an interim custody order because Mother was allegedly withholding custody of the minor child from him in retaliation for filing a custody complaint.  *See* Petition, 10/24/19.  In his second Petition, filed December 2019, Father requested the trial court vacate its November 7, 2019 order requiring supervised visits with the child, because he spent two of his eight hours per week with the child traveling to and from pick-up and drop-off points that Mother changed unilaterally and arbitrarily.  *See* Petition, 12/13/19.  While the Petition was denied, it was **effectively granted** to the extent that the parties were ordered to mutually agree on a halfway point for exchanges.  *See* Order, 12/20/19.  In his third Petition, filed January 2020, which the trial court **granted**, Father sought an expedited conciliation with the court following an unsuccessful mediation

granted three of the nine Petitions outright (the third, fourth, and eighth petitions), granted one petition in part (the sixth petition), effectively granted two additional petitions in part (the second and fifth petitions),[9] and ultimately approved Father's request for unsupervised custodial periods,[10] *see* Order,

---

attempt with Mother, and further requested the parties be required to communicate solely through OFW due to ongoing communication issues between them. *See* Petition, 1/17/20. In his fourth Petition, filed February 2020, which the trial court **granted**, Father requested that Mother unblock his phone number and use OFW for non-emergency contact only, following an incident where the child was hospitalized but Father could not contact Mother via phone. *See* Petition, 2/26/20. In his fifth Petition, filed April 2020, Father requested daily video calls with the minor child after suspending visits with her due to her health issues and the ongoing COVID-19 pandemic; although the court denied his petition, the court **effectively granted** Father's request to have daily video calls with the child, albeit at the time Mother chose. *See* Order, 4/27/20. In his sixth Petition, which the trial court **granted in part**, Father sought, *inter alia*, limited discovery into Facebook and cell phone records to determine whether Mother was using his social media accounts, requested that Mother not communicate with Father's girlfriend, and requested that supervised visits be able to occur in Pittsburgh, where Father lives. *See* Order, 6/18/20. In his seventh Petition, filed after Mother unsuccessfully sought a PFA against him in Erie County, Father requested that the court vacate its order requiring supervised custody and find the issue of domestic abuse *res judicata*. *See* Petition, 8/3/20. In his eighth Petition, which the trial court **granted**, Father requested the trial court order that, in the event Father's sister could not supervise his visits with the minor child, Father's cousin, a father of two minor children himself, may supervise the visits, after Mother refused Father's request for the same. *See* Petition, 9/3/20. In his ninth Petition, Father requested the court order that Mother refrain from contacting Father's girlfriend and cooperate with Father at pick-ups and drop-offs, in accordance with its prior orders, and again requested that the court vacate its order requiring supervised visits. *See* Petition, 10/16/20.

[9] *See supra*, at n.8.

[10] In awarding counsel fees for Father's "repetitive" filings, the trial court emphasized that "an underlying theme throughout was his belief that

2/12/21, "we cannot say that each petition is without relative merit." *See id.*; *see also Thunberg*, *supra* at 300. Additionally, we note that here, as in *Dong Yuan Chen*, "the trial court failed to explain in its opinion how the filing of [Father's nine petitions in twelve months] legitimately affected the well-being of the child or how the filings in any way altered the status quo." *See id.* at 592.[11]

---

supervised visits were unnecessary." Trial Court Opinion, 2/16/21, at 14. However, the trial court evidently agreed with Father's assessment before issuing its Rule 1925 opinion. *See* Order, 2/12/21 (removing requirement that Father's custodial time be supervised).

[11] Meanwhile, Father specifically argued in his ninth petition, *inter alia*, that:

> [N]early one year ago, Mother [] made claims regarding Father's abusive behavior. As a result, Father's time [with Child became] supervised. However, the court made no findings that abuse occurred nor articulated why Father's time was supervised.
>
> Mother also filed a failed PFA in Erie County, which Mother lost on the merits. . . . The issue of alleged abuse was litigated . . . and the Judge found Mother not to be credible.
>
> Since the beginning of this litigation, Mother has done everything in her power to interfere [with] Father's custodial time and relationship with the child including refusing to agree to anything (i.e.[,] another supervisor, providing her telephone number, meeting location change, and allowing Father to take the child, supervised, to family gatherings to name just a few). . . . [I]**t is in the child's best interest to have a normal relationship with both parents** . . . [**and**] **with her sibling**. Father is requesting [the court] provide his child with the opportunity to not only have a normal relationship with him, but with her sibling.

Petition, 10/16/20, at 5 (paragraphs reordered for clarity; unnecessary capitalization omitted).

Based on the foregoing, we conclude that the award of counsel fees under section 5339 for "repetitive" filings was "unwarranted and an abuse of discretion in this case." **See Dong Yuan Chen**, **supra** at 593. We next turn to whether the court abused its discretion in awarding counsel fees under section 2503 for behavior that was "vexatious[] and in bad faith" without a hearing. **See** Trial Court Opinion, 2/16/21, at 14; Brief of Appellant, at 13.

Here, the trial court found that counsel fees were warranted under 23 Pa.C.S.A. § 2503, which provides that counsel fees may be awarded when the conduct of another participant is vexatious or in bad faith. **See id.** at §§ 2503(7), (9). This Court explained in **In re Estate of Burger**, 852 A.2d 385 (Pa. Super. 2004), that:

> An opponent also can be deemed to have brought suit "vexatiously" if he filed the suit without sufficient grounds in either law or in fact **and** if the suit served the sole purpose of causing annoyance. Finally, an opponent can be charged with filing a lawsuit in "bad faith" if he filed the suit for purposes of fraud, dishonesty, or corruption.

**Id.** at 391 (emphasis added). "[D]isposition of claims under either section generally requires an evidentiary hearing[. However,] no hearing is necessary where the facts are undisputed." **Id.** We have further held that, where the record is unclear as to whether the appellant brought the instant action vexatiously or in bad faith, "the trial court err[s] in awarding attorney's fees and costs in the absence of a hearing to determine whether [the] appellant [actually] acted [] vexatiously[] or in bad faith." **State Farm Mut. Auto. Ins. Co. v. Allen**, 544 A.2d 491, 494 (Pa. Super. 1988).

As a preliminary matter, we note that the trial court did not articulate specific facts as to how Father acted vexatiously; the trial court did not conclude that Father filed his complaint for primary custody or any petition for special relief without sufficient grounds in fact or in law. Additionally, we are constrained to disagree that Father's filing served the "sole purpose of causing annoyance" where the trial court granted much of Father's requested relief. **See In re Estate of Burger**, **supra** at 391; **see also supra** at n.8. Although Father **may** have intended to frustrate Mother, our independent review of the record indicates that Father's filings demonstrate a legitimate desire to spend more time and foster a "normal relationship" with his minor child as early as possible. **See, e.g.**, Petition, 10/24/19; Petition, 12/13/19; Petition, 2/26/20; Petition, 9/3/20; Petition, 10/16/20. **See also Thunberg v. Strause**, **supra** at 300 ("strict definitional guidelines" under section 2503 necessary to prevent chilling effect on right to bring suit for harms suffered).

Furthermore, the trial court has not articulated "undisputed facts"[12] establishing Father's bad faith—i.e., that Father acted "for purposes of fraud,

---

[12] **See State Farm Mut. Auto. Ins. Co. v. Allen**, **supra** (reversing award of counsel fees under section 2503 for vexatious conduct in bad faith where facts supporting award were not undisputed; trial court awarded fees based on "flagrant lies" and "deliberate omissions of material fact" in appellant's filings, but "in the absence of a hearing to further develop the record on the question of appellant's bad faith, [this Court] cannot determine the propriety of the award of attorney's fees and costs"); **In re Estate of Burger**, **supra** at 390-92 (undisputed facts established appellee did not act in bad faith by filing application to quash appeal as untimely where docket erroneously indicated appeal was not timely filed, because appellee was entitled to rely on contents

dishonesty, or corruption." *See In re Estate of Burger*, *supra* at 391. The trial court concluded Father acted in bad faith by arguing that Mother's motion to continue the custody trial caused him prejudicial delay "while ignoring the fact that trial had been delayed in large part by his own refusal to pay the psychological evaluation fee,"[13] specifically reasoning that "arguments of prejudicial delay are disingenuous when the party making them has done nothing but obstruct[] the process." Trial Court Opinion, 2/16/21, at 15. Again, however, we are constrained to disagree upon our review of the record that Father "has done nothing but obstruct[] the process" where the trial court granted the majority of his remedies sought, *see supra* at n.8, and agreed with Father prior to issuing its Rule 1925 opinion that supervised custody was unnecessary, as Father has consistently maintained throughout his petitions. *See Thunberg v. Strause*, *supra* at 300 (section 2503 focuses on conduct of party from whom attorney's fees are sought and on relative merits of that party's claims).

Lastly, the trial court concluded that Father acted in bad faith by filing Petitions for Special Relief, rather than Petitions for Contempt, to enforce Mother's compliance with prior orders of court. Trial Court Opinion, 2/16/21,

---

of court's official docket); *Kulp v. Hrivnak*, 765 A.2d 796, 800 (Pa. Super. 2000) (undisputed facts established appellant acted in bad faith by willfully violating terms of settlement agreement).

[13] The record demonstrates that Father paid the court-ordered psychological evaluation fees on August 28, 2020. *See* Petition, 10/16/20, Exhibit A (schedule of payments).

at 14-15. Nevertheless, in addition to the fact that Father did file a Petition for Contempt in June of 2020, Pa.R.C.P. 1915.13 provides that, "at any time after commencement of [an] action," the court, on its own motion or upon application, may "grant appropriate interim or special relief[ which] may include . . . the award of temporary legal or physical custody . . . and a direction that a person . . . comply with any order of the court." 231 Pa. Code. § 1915.13.

Under these circumstances, we conclude that the trial court abused its discretion in awarding Mother counsel fees under section 2503 for conduct that was "vexatious[] and in bad faith," *see* Trial Court Opinion, 2/16/21, at 16, absent a hearing to develop on the record the question of Father's vexatiousness or bad faith. *State Farm Mut. Auto. Ins. Co. v. Allen*, *supra* at 326; *Dong Yuan Chen, supra* at 591; *see also supra*, at n.12.

Based on the foregoing, we reverse the trial court's award of counsel fees to Mother and remand for further proceedings consistent with this Opinion. On remand, the trial court shall hold a hearing to develop the record on the issue of whether Father's conduct, in light of the relative merits of his claims, was repetitive, vexatious, or in bad faith as a matter of law, and, if so, determine a reasonable award of counsel fees to Mother.

Order reversed. Remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:   8/4/2021