## Amon Estate

*James J. Heffernen,* for petitioners.
*J. Brooke Aker* and *M. Paul Smith,* for surviving spouse.
*Desmond J. McTighe,* for executrix.

TAXIS, *J.,* December 6, 1976—William Hogan, Sr. and Kathleen H. Bucci, petitioners, are decedent's residuary legatees. The petition seeks to strike off the election to take against the will filed by decedent's spouse, Harry G. Amon. The grounds are that the election was filed more than six months (actually six months and 22 days) after the grant of letters, which allegedly violates the requirements of section 2511 of the Probate, Estates and Fiduciaries Code of June 30, 1972, P.L. 508 (No. 164), 20 P.S. §2511.

ᵗA hearing was held on September 27, 1976, and the matter has been argued and briefs submitted. The issues before the court are whether or not the statutory time limit may be extended by the court for cause shown and, if so, what facts or circumstances constitute such cause.

Harry G. Amon and decedent owned their residence as tenants by the entireties. In addition to acquiring sole title to this property through his wife's death, Mr. Amon was left some personal items, including a car, by the will, and decedent also therein created a $50,000 trust for him for his lifetime. Decedent had inherited the bulk of her estate from a deceased brother, and felt impelled to retain the assets substantially in her own family. Her will had been drawn by Desmond J. McTighe, Esquire, in 1971, and he is now counsel for the executrix, Mary Ellen Moore. Shortly after decedent's death Mr. Amon, in cooperation with Mrs. Moore, withdrew the contents of his and de-

cedent's joint safe deposit box and delivered them to Mr. McTighe's office. Mr. Amon also cooperated in the appraisal of the residence and the personal effects in it belonging to decedent, as required for tax purposes. Also, in the course of the estate administration, Mr. McTighe collected the proceeds due Mr. Amon from three insurance policies on decedent's life, which matters Mr. McTighe took care of without charge, mainly to obtain the necessary information for proper tax treatment of the insurance proceeds in the State and Federal death tax returns. However, Mr. Amon never actually met with Mr. McTighe after decedent's death, and it is clear that Mr. McTighe relied upon the executrix to communicate with Mr. Amon as necessary, as illustrated by the fact that the deed to the property was returned to Mr. Amon by Mr. McTighe, through Mrs. Moore.

Mr. McTighe testified that he and Mrs. Moore had discussed the right of Mr. Amon to elect to take against the will, but that neither he nor Mrs. Moore had at any time informed or advised Mr. Amon of his right to do so, or about the size of the estate or of the advisability of consulting counsel of his own. His entirely proper explanation for this was that he had represented Mrs. Amon in preparing the will and is presently representing the estate, in which circumstances his primary obligation is to defend and implement the will and not to assist in rendering part of it ineffective. Mr. Amon had a copy of and knew about the will, but testified that although he thought it was unusual and did not care for it, he did not decide to do anything about it until after the six-month elective period had expired.

In 1950, Mr. Amon had consulted M. Paul

Smith, Esquire by himself, for the preparation of a will. At that time, it appears that he and Mr. Smith discussed the rights of Mrs. Amon to elect against his will, but Mr. Amon was not made aware at that time that he had a corresponding right against his wife's will. Mr. Smith's notes do not indicate that Mr. Amon was ever told of any time limits on such a right. Mr. Amon returned to Mr. Smith in 1968 for a minor change to the will. On August 13, 1976, he went again to Mr. Smith's office for the preparation of a new will, and there learned of his elective rights. The present election followed promptly, three days later.

Harry G. Amon is now eighty-four years of age. He testified that he had only an eighth-grade education. Physically, he suffers from circulatory problems, but these are perhaps not unusual for a man of his age. At the hearing, he impressed the court with the clarity of his mind and the responsiveness of his answers, and he is clearly competent and credible.

The applicable Statute pertinently provides:

"As between the surviving spouse and other legatees and devisees, the spouse's election shall be in time if within six months after the probate of will the surviving spouse shall [elect to take against it] . . ."

Subsequent language permits this court, upon application *within* six months, to extend the time for making such an election, but the act is otherwise silent as to the permissibility of and basis for extending the time *after* the expiration of the six-month period. Although the language ". . . shall be in time if within six months . . . ," may be referring only to the power granted to the court to extend the time, it nevertheless appears that other facts and

circumstances may warrant an extension even though not applied for within the six-month period.

The principal basis dealt with by the reported cases is where "actual fraud" against the electing spouse is present: Freer Est., 353 Pa. 351, 45 A.2d 47 (1946). However, if "actual fraud" in a strict sense were always required, extensions of the six-month period on equitable grounds would be few and far between. In most such cases utilizing this ground to deny an extension, such as DiMarco Est., 435 Pa. 428, 257 A.2d 849 (1969), and Faller Est., 407 Pa. 73, 180 A.2d 33 (1962), the electing spouse had sufficient knowledge of the circumstances surrounding the administration of the deceased spouse's estate to have enabled any normally prudent person to determine his or her rights and to act upon them, so that he or she was not entitled to equitable relief. Moreover, in most of the cases the extension sought was for months and occasionally for years, not, as here, for 22 days.

This court does not subscribe to the rule, suggested by the argument of the surviving spouse, that the executrix or her counsel owed a fiduciary duty to Harry G. Amon to advise him of his right to elect against the will and to disclose to him the estate's size and value. In spite of recent statutory revisions in this and other areas of Pennsylvania probate law and the nationwide circulation of the proposed Uniform Probate Code, there is no authority, either in existence or proposed, which imposes such a duty generally. In Fiduciary Review, March 1967, it is said:

"If the executor and his counsel must fully inform the surviving spouse of his or her elective rights and of the relative choices available, the

burden of doing so in some situations may be onerous, especially when inter vivos transfers subject to the provisions of Section 11 of the Estates Act of 1947 may be involved. There is the further factor that an attorney-scrivener as well as the executor may consider themselves under an obligation of loyalty to the wishes of their employer-testator."

This statement was made in reviewing Rowe Est., 17 Fiduc. Rep. 107 (1967), wherein the Court said, at page 110:

"There can be no question that the executor in this case owed a fiduciary duty to Emma Rowe to disclose to her the value of the assets of the estate and the value which she would receive under the alternatives available to her: . . ."

HoWever, the facts to which the court applied this rule were that the executor sought and obtained from the surviving spouse a release of her right to elect against the will, prior to the filing of an inventory or schedule of debts and deductions. In such circumstances, the court quite properly found that it would have been inequitable to enforce such a release when the widow was lacking material facts on which she could have based an intelligent decision as to whether or not she should execute the agreement. It is also noteworthy that the agreement recites that the value of the estate was in excess of $45,000, while the inventory filed shortly after the agreement's execution stated a value of $112,700. The court pertinently noted, ". . . such agreements prior to inventory and appraisement must be based on a reliable estimate of the worth of the estate. The benefit of separate counsel would perhaps assure that such safeguards would be judiciously observed."

In Kaufman Est., 3 Fiduc. Rep. 403 (O.C. Lehigh,

1953), the court again found a duty upon counsel fully and frankly to apprise an electing spouse (the widow) of her rights. Again, however, this was conditioned on another circumstance, namely, that counsel for the estate was also counsel for the widow. It thus appears to the court that no case has found an absolute requirement on the part of the executor or his attorney in effect to represent a surviving spouse in the matter of a possible election against the will. Harry G. Amon argues otherwise for the reasons that the matter was specifically discussed by the executrix and Mr. McTighe, and also because Mr. McTighe performed services for Harry G. Amon in obtaining the proceeds of the insurance policies for him. But it is clear that both of these actions by Mr. McTighe were requisite in the administration of the estate, without regard to any duty toward Mr. Amon. It is also clear that Mr. McTighe was motivated by what was clearly his primary duty, that of upholding testatrix's will and preserving her estate for the purposes set forth in it. Therefore, there was no duty on either Mr. McTighe or Mrs. Moore to inform Mr. Amon concerning his possible rights to part of decedent's estate.

However, the court believes that there are ample equitable grounds for allowing the election to stand. At all relevant times, Harry G. Amon was an elderly man in only passable health. Practically he was without counsel, certainly without regular counsel, having last seen Mr. Smith in 1968 on a minor matter only. He received no current advice concerning his rights in the estate prior to the expiration of the six-month period. While he was somewhat disturbed by the content of his wife's will, nevertheless he received some benefits under

it and was probably thus less impelled to seek more. He apparently assumed that through the executrix he would receive any information he required and although this is not the law, as has been seen, it was a reasonable assumption.

Further, if the election is allowed to stand, no third parties will be harmed. There will be no effect upon the rights of creditors or purchasers for value, since none intervened during the 22-day delay in filing. Cf. Hershey Est., 10 Fiduc. Rep. 390 (O.C. Fulton 1960). In addition, it must be observed that Harry G. Amon and his counsel acted promptly, when his legal rights became apparent. Mr. Amon complained in his testimony that he did not receive information about the estate as freely as he desired, and that he could not find out some things that he wanted to determine. Be that as it may, it is evident that Mr. Amon was not informed of, nor was he conversant with the rules of law which now are affecting him so greatly, and that he was not in any way cognizant of his right to elect against the will or the time limit for doing so. Therefore, the equities in his favor preponderate and the election should be upheld.

Undoubtedly, there is a problem in the law in this area as it exists. It is not really an acceptable solution simply to presume a comprehensive knowledge of the law on the part of every surviving spouse. Cf. Schmick Est., 349 Pa. 65, 36 A. 2d 305, (1944). We have already seen that there are substantial exceptions to the concept of "actual fraud" as it is applied, yet at the same time the law is unwilling to impose an absolute duty upon the executor or counsel to notify a surviving spouse comprehensively of his rights. Perhaps notice should be routinely given to a surviving spouse

that he might have an interest in the estate and should consult counsel with respect to it. Whatever the best remedy may be, one should be adopted in the future to avoid needless contests of this type.

We enter the following

## ORDER

And now, December 6, 1976, the prayer of the petition of William Hogan, Sr. and Kathleen H. Bucci to vacate the election of Harry G. Amon to take against the will of Anne E. Amon, deceased, is denied, and the petition is dismissed.