J-A11026-23

2023 PA Super 221

| | | |
|---|---|---|
| IN RE: ESTATE OF WILLIAM H. SIMPSON, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: DAVID COLECCHIA | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1042 WDA 2022 |

Appeal from the Order Entered August 16, 2022
In the Court of Common Pleas of Westmoreland County Orphans' Court
at No(s):  No. 65-20-297

BEFORE:   BENDER, P.J.E., STABILE, J., and PELLEGRINI, J.[*]

OPINION BY BENDER, P.J.E.:                    **FILED:  October 31, 2023**

Appellant, David Colecchia, appeals from the order entered on August 16, 2022, in the Court of Common Pleas of Westmoreland County Orphans' Court Division, requiring him to pay a surcharge in the amount of $3,754.11, to the Estate of William H. Simpson, deceased.  After careful review, we reverse.

This matter arises from the administration of the Estate of William H. Simpson, deceased ("Estate").  The underlying action involves the January 9, 2018 last will and testament of the decedent (the "Will"), which was drafted by Attorney Del P. Nofi, III, Esquire.  Orphans' Court Opinion ("OCO"), 10/25/22, at 1.  The Will was probated in the Office of the Register of Wills of Westmoreland County on February 7, 2020.  *Id.*  On March 10, 2020, Nancy

_____

[*] Retired Senior Judge assigned to the Superior Court.

Olga Simpson, decedent's wife, completed an election to take under the Will in accordance with Section 2203 of the Probate, Estates and Fiduciaries ("PEF") Code, 20 Pa.C.S. §§ 101-8815.[1]  The Will did not include Ms. Simpson as a beneficiary; thus, her election resulted in her receiving no money from the Estate.  *Id.*

On January 18, 2022, David Colecchia, Esquire ("Appellant") filed an "Objection to Account (Fraud)" on behalf of his client, Ms. Simpson.  *See* Objection to Account, 1/18/22, at 1-10.[2, 3, 4]  Notably, the Objection to Account

_____

[1] *See* 20 Pa.C.S. § 2203 (providing the surviving spouse of a resident decedent the right to an elective share of one-third of the property enumerated in subsection 2203(a)); 20 Pa.C.S. § 2210 (establishing the procedure and time limit for a surviving spouse's exercising of her right to elect to take or not to take her elective share).

[2] *See generally* Pa.O.C.R. 2.7 (governing objections to accounts).

[3] We observe that Appellant's cover page indicates the type of pleading as "Objection to Account (Fraud)"; however, the full caption of the pleading reads "Objection to Account Request to Take Against the Will."  Objection to Account at 1-2 (capitalization omitted).  Despite confusion regarding the nature of this pleading, as illustrated *infra*, we refer to this pleading herein as the "Objection to Account" for consistency purposes.

[4] The orphans' court indicates that the Objection to Account was "not properly served on the Estate through its Executrix, Lisa Lynn Waeyaert, or its counsel[,]" nor did it "contain a verification as required by Pennsylvania Orphans' Court[] Rule 3.13."  OCO at 2.  *See also* Pa.O.C.R. 2.7(a) (providing that objections to an account "shall be … served on the accountant or the accountant's counsel, if represented"); Pa.O.C.R. 3.13(a) (requiring "[e]very pleading" to be verified).  We note, however, that service of the Objection to Account or lack thereof is not at issue in this appeal.  *See* OCO at 3 (the orphans' court acknowledging that "whether or not Appellant was able to complete service [of the Objection to Account] is irrelevant," as the sanctions assessed against him were "based on other conduct").

did not contain any assertions of mistake in the first and final account filed by the Executrix on December 3, 2021.[5]   Rather, it averred the following, in relevant part:

**FACTUAL BACKGROUND**

5)    In this matter, the decedent's Will does not provide for his spouse, Nancy Simpson.

6)    Ms. Simpson on or about March 10, 2020, completed an election to take under the Will and therefore receive [*sic*] nothing.

7)    This election occurred at the office of Attorney Del Paul Nolfi III, the representative of Ms. Lisa Waeyaert, Executrix, and the Estate….

8)    Ms. Simpson traveled to the office of Attorney [Nolfi] because of a letter he sent her requesting that she consider taking under the Will.   This letter is attached to the petition for distribution.

9)    At the time of the election, no one [had] informed Ms. Simpson of the value of the Estate as of that date and no inventory had been filed or provided to her.

10)   At the time of the election, Attorney [Nolfi] allegedly advised Ms. Simpson that she should take under the Will because if she elected to take against the Will, it would influence and/or cause a decrease in her Social Security.

11)   This statement of law, if made by Attorney [Nolfi, was] in error, in that taking against the Will would not affect Ms. Simpson's Social Security benefits.

12)   This misstatement of law actively harm[ed] Ms. Simpson, as failing to elect against a will acts as a resource transfer without consideration, and thus would be a basis for

_____

[5] ***See*** Pa.O.C.R. 2.7(c) (providing that "[e]ach objection shall: (1) be specific as to description and amount; (2) raise one issue of law or fact…; and (3) briefly set forth the reason or reasons in support thereof") (paragraph breaks omitted).

denial of Medicaid benefits. ***Perna ex rel Bekus v. DPW***, 807 A.2d 310, 313 (Pa. Super. 2002)[.]

13) Ms. Simpson justifiably and detrimentally relied on Attorney [Nolfi's] legal advice to execute the election to take under the Will.

14) Also, because of this alleged improper advice, Ms. Simpson trusted the advice and did not seek independent legal counsel to investigate whether the decedent's January 9, 2018 Will was the product of undue influence.

15) By discussing Ms. Simpson's legal rights with her, Attorney [Nolfi] created and perpetuated an improper and irreconcilable conflict of interest between Ms. Simpson and the Estate.

16) This conflict was further perpetuated by the … Executrix, Lisa Waeyaert, who paid off the mortgage on Ms. Simpson's home by giving her a gift exceeding $40,000.

**OBJECTION TO ACCOUNT**
**REQUEST TO TAKE AGAINST THE WILL**

17) The objector re-avers and incorporates herein the prior paragraphs.

18) Normally, a deceased spouse has one year to elect to take against the will.

19) Further, in this matter, Ms. Simpson agreed to take under the Will despite receiving nothing from the Will.

20) However, actual fraud against the spouse can toll this deadline or provide a basis to nullify the written election. ***In re DiMarco's Estate***, [257 A.2d 849 (Pa. 1969)].

21) Such actual fraud can occur due to the breach of a fiduciary duty to inform. ***In re Amon's [E]state***, 1 Pa. D. & C.3d 479, 484 ([Montgomery Cty.] 1976).

22) Inducing a spouse to sign an election under a will prior to the filing of an inventory, and without disclosing the value of the assets of the estate and the value she would receive under certain alternatives, is a breach of such a fiduciary duty. ***In re Amon's Estate***, ***supra***….

23)    An intentional misstatement of the law also can act as a basis for showing actual fraud. ***DiMarco's Estate***, ***supra***.

24)    The objector, Ms. Simpson, requests this Honorable Court issue citation [*sic*] verses [*sic*] the executor and her attorney[,] Del Paul Nolfi III, to show cause why[,] … given these circumstances[,] Ms. Simpson should not be entitled to elect to take against the Will and take her statutory share.

25)    A trial by jury is requested.

WHEREFORE, Objector Nancy Simpson respectfully requests this Honorable Court issue a citation verses [*sic*] Executrix Lisa Waeyaert and Attorney Del Paul Nolfi III[,] to show cause why the above relief should not be granted and that Ms. Simpson should be entitled to take her elective share against the Will.

***Id.*** at 3-5 (cleaned up).[6]

On January 20, 2022, a hearing was scheduled on this matter for June 6, 2022.[7]  At the hearing, the following appearances were entered: Appellant, on behalf of Ms. Simpson; Attorney Nolfi, on behalf of the Estate; and Todd Turin, Esquire, on behalf of the Estate and Attorney Nolfi.  N.T. Hearing,

_____

[6] The orphans' court opined that the Objection to Account "did not contain any assertions of mistake in the account, but rather alleged malpractice against Attorney Nolfi in allegedly advising Ms. Simpson to take under the Will."  OCO at 2.

[7] The scheduling order expressly stated that "upon consideration of the surviving spouse's **petition for citation to exercise her right to elect to take against her deceased husband's will**, it is hereby ordered, adjudged and decreed that a hearing on **the petition** shall be held on the 7th of June, 2022[,]" in the Westmoreland County Courthouse.  Scheduling Order, 1/20/22 (single page) (cleaned up; emphasis added).  We recognize that the scheduling order states the hearing will be held on June **7**, 2022.  However, we observe that all further reference to the hearing contained in the record, including the hearing transcript, indicates that the hearing was held on June **6**, 2022.  ***See, e.g.***, OCO at 2; N.T. Hearing, 6/6/22, at 1-2.  Our review of the record has not revealed anything to explain the discrepancy in these dates.  Thus, to avoid further confusion, we assume June 6, 2022 was the hearing date herein.

6/6/22, at 1. At the beginning of the hearing, in response to the court's reference to this matter as "a will contest[,]" Appellant informed the court: "This is not a will contest. This is a contest concerning the election." *Id.* at 5. *See also id.* (Appellant's indicating that he has an expert "[f]or legal malpractice"). Mr. Turin countered, "The manner of pleading in this particular case was an objection to an account." *Id.* at 6. After calling the court's attention to Orphans' Court Rules 2.7 and 3.13, Mr. Turin further averred that the Objection to Account was not properly verified by Ms. Simpson, that it did not contain any specific objections to the account, and that perhaps Appellant intended to petition the court for an extension of time regarding Ms. Simpson's election. *Id.* at 6-7. The following colloquy then took place between the court and Appellant:

| | |
|---|---|
| THE COURT: | I'll allow you to respond. If you are outside of the purview of the objections to accounts and in fact you aren't in compliance with Rule 3[.]13, you cannot move forward today. |
| [APPELLANT]: | I respectfully disagree, Your Honor, because the objection to the account is an objection as to fraud. It is very simple. |
| THE COURT: | Show me in the rule where it applies. |
| [APPELLANT]: | Judge, we can object to the account in terms -- |
| THE COURT: | No. You have to show me in the rule where it applies. … When Rule 2.7 applies in regards to an orphans' court and fiduciary matter. My question to [you is] under the objection of the account, how do you move this action for fraud and perhaps malpractice forward…? |

…

[APPELLANT]:     The point of the matter here and the point of what we're trying today here is whether Mr. Nolfi gave my client legal advice. And if he did, he created an improper conflict of interest and fraudulently induced her to sign the election to take under the will. Which is improper. And that is the basis of our objection….
                                          …

THE COURT:     My question to you then is why aren't you in the civil court division filing under a malpractice claim specific to the attorney as opposed to an objection on the account of an estate inside of the orphans' court division?

[APPELLANT]:     That's a fair question. That I agree with. I debated that. Because I believe that the orphans' court is the proper place to adjudicate that claim. Because at the bottom of this is whether, in fact, the election to take under the will was proper….

*Id.* at 7-10.

After some further debate regarding the format of Appellant's claim,[8]

the exchange between Appellant and the court continued:

[APPELLANT]:     We stand on our position, Your Honor. We believe that – if I may, ***Amon's Estate*** and also ***Rowe Estate*** from 1967, these cases – this has

_____

[8] ***See*** N.T. Hearing at 12 (Mr. Turin's suggesting that an objection to account is not the proper manner in which to bring a cause of action against Attorney Nolfi); ***id.*** at 14-15 (Appellant's explaining that "[t]his conflict was further perpetuated by the … Executrix"; averring that the Executrix and Attorney Nolfi came up with a scheme to pay off Ms. Simpson's mortgage to get her to sign the election to take under the will; stating "the whole thing is whether the election to take under the will is valid and what was done at that time"; and insisting "I think this position can be addressed in an estate"); ***id.*** at 14-15 (the court's opining "if [Attorney Nolfi], in fact, committed criminal acts of conspiracy with those in the administrative capacity to defraud a beneficiary, that is a malpractice case"; "It's not an orphans' court case. And you're in the wrong venue. You're in the wrong division of the court….").

|                | long been black letter law that we can challenge the election to take under the will in an orphans' court proceeding. |
| --- | --- |
| THE COURT: | But a challenge to the election under a will is separate and apart to an objection of the account. That's a totally different action with a totally different standard, and in use of your precedent law, the election challenge is appropriate with those cases but not on an objection to an account. Counsel. |

…

| [APPELLANT]: | … What we intend to proceed upon is the issue of whether, in fact, [Ms.] Simpson's election to take under the will was the product of fraud or undue influence. |
| --- | --- |
| THE COURT: | That's a totally different case than you pled. If that's the action you want…, you need to withdraw this objection of the account and file with regard to the election under the will. Because that's then the proceeding that they, under fairness, have a right as the respondents to prepare to defend relative to your action. |
| [APPELLANT]: | Your Honor, it is our intention here to attack the election under the will. Because that's the issue in this estate. And whether in fact – |
| THE COURT: | Well, that's not what's before the [c]ourt today. |
| [APPELLANT]: | I guess where you're coming from – |
| THE COURT: | Look, I have your pleading right here. It says objection to account, request to take against the will. |
| [APPELLANT]: | Which is both – which is what we're trying to say. She had the right to – and if we need to amend the pleadings, we can, to make it clear[.] |

*Id.* at 16-19.

The court reminded Appellant that under Rule 2.7, a specific objection to the account must be pled. *See id.* at 22-23 ("You have to have something

- 8 -

averred in your pleadings that are specific under the rule that are specific as to amounts, that are specific as to property, that are specific as to who is to be a receiver of that, and then a verification attached under Rule 3[.]13 by that moving party or beneficiary. You have neither of those."). Appellant inquired as to how an issue regarding an improper election should be raised. *Id.* at 26. The court clarified, "[t]hat's a separate pleading all together that is provided for under the fiduciary code[,]" and it again suggested to Appellant that he "withdraw the objection to account." *Id.* The following exchange then occurred:

| | |
|---|---|
| [APPELLANT]: | Without prejudice. |
| THE COURT: | Well, you can request that. I'm sure it would be opposed, and I'll hear that from the other side I anticipate. And I'll make a ruling one way or the other on the objection to account, which is what is before the [c]ourt today. |
| [APPELLANT]: | See, Judge, I'm not sure that that's exactly what's in front of the [c]ourt. |
| THE COURT: | You have to be cognizant of timelines, time limitations, to determine whether or not you are even … permitted to move forward by way of both the fiduciary code, the statutory set-up and the precedent law. |
| [APPELLANT]: | But the precedent law, I believe allows me to make the -- |
| THE COURT: | Well, the precedent law that you've included here applies to the election format under 20 Pa.C.S.[ §] 2210. It does not apply to Rule 2.7, which is the objection to account. |
| [APPELLANT]: | But, Judge, here becomes the question. Maybe this got off track, because it's very clear what we're trying to plead here. Now -- |

| THE COURT: | It's not clear within the rule…. |
|---|---|
| [APPELLANT]: | Your … point here is that we haven't pled something under Rule 2.7 – |
| THE COURT: | No, under statutory code 2210. |
| [APPELLANT]: | Under 2210, we have. Because we've pled fraud. Under 2210, we clearly have pled – and that's what we're trying to plead under 2210, an improper election and fraud in the election. |
| THE COURT: | Sir, you have not done that. The respondents are not prepared to litigate and/or defend because that's a totally different procedural avenue relative to this area of law. |
| [APPELLANT]: | But the problem is, Judge, we had asked for a Rule to Show Cause and an answer with this. We didn't get an answer. |

*Id.* at 27-29.[9]

After a short break to provide counsel with the opportunity to meet with their clients, Appellant agreed — at the court's urging — to withdraw the Objection to Claim. *Id.* at 38. The orphans' court accepted the withdrawal as a withdrawal with prejudice and informed the Estate that it was "permitted to confirm the account and proceed to a decree." *Id.* at 39. *See also* Decree,

_____

[9] Mr. Turin informed the court that Attorney Nolfi was only served with the scheduling order, not the Objection to Account, and that Attorney Nolfi took it upon himself to obtain a copy of the Objection to Account from the Register of Wills. N.T. Hearing at 29. Additionally, we note that the Scheduling Order declared that the orphans' court "shall issue a citation" on the Executrix and her counsel and that the petitioner "shall serve a copy of his petition, this order, and this court's citation pursuant to 20 Pa.C.S.[] § 765[,]" Scheduling Order (single page) (cleaned up), yet there is nothing in the record to indicate that the court ever issued such a citation. Nevertheless, Attorney Nolfi filed an Answer to Objection to Account, on behalf of Ms. Waeyaert, on May 19, 2022.

6/6/22 (single page) (confirming the account for the Estate); Order, 6/8/22 (single page) (declaring that the Objection to Account is withdrawn with prejudice and that the account for the Estate is confirmed).[10]

Appellant filed a timely motion for reconsideration of the court's June 8, 2022 decision, seeking to rescind the withdrawal of the Objection to Account. Appellant argued, *inter alia*, that the Objection to Claim was, "in substance," a request "to withdraw [Ms. Simpson's] election to take under the will and to thereafter elect to take against her deceased husband's estate." Motion for Reconsideration, 6/17/22, at ¶ 4.[11] He asserted that, based on the court's position and continued suggestion, he "sought to withdraw the petition **without prejudice**[,]" on behalf of Ms. Simpson. *Id.* at ¶ 8 (emphasis added). However, "the [c]ourt took this withdrawal request as **with prejudice** and thereafter confirmed the account…." *Id.* at ¶ 9 (emphasis added).

In support of his request for reconsideration, Appellant argued that the orphans' court's analysis that precipitated Ms. Simpson's withdrawal of the Objection to Account was based on several legal errors. *Id.* at ¶ 11. For instance, Appellant asserted that the orphans' court "had the ability to take

_____

[10] The order of court is dated June 6, 2022, but it was not filed with the Westmoreland County Register of Wills and docketed until June 8, 2022.

[11] **See also** Motion for Reconsideration at ¶¶ 6-7 (Appellant's averring that, at the June 6, 2022 hearing, the Estate argued the Objection to Account was mis-titled and was not in fact an objection against the account; Appellant agreed that the pleading "was mis-titled, but insisted the objection was proper as a request to withdraw [Ms. Simpson's] consent to take under the will").

the [Objection to Account] as a petition to rescind the election as necessary to achieve justice." *Id.* at ¶ 18 (citing Pa.O.C.R. 1.2(a) (stating that the Pennsylvania Rules of Orphans' Court Procedure "shall be liberally construed to secure the just, timely and efficient determination of every action or proceeding to which they are applicable" and that the court "at every stage of any action or proceeding may disregard any error or defect of procedure that does not affect the substantive rights of the parties in interest")).[12] The orphans' court denied Appellant's motion with prejudice.[13]

On June 8, 2022, Mr. Turin filed a petition for surcharge on behalf of the Estate and its Executrix, Ms. Waeyaert, seeking the recovery of attorneys' fees, costs, and executor's costs from Appellant in connection with the defense of the Objection to Account. Mr. Turin averred that the Objection to Account was "not appropriate for the relief requested" and was "clearly precluded by … Rule[s] 2.7 and … 3.13[.]" Petition for Surcharge, 6/8/22, at ¶ 3. Thus, he requested that the court surcharge Appellant in the amount of $2,357.50 for additional legal services rendered by Attorney Nolfi; $2,790.00 for legal services rendered and costs advanced by Mr. Turin; and $1,185.11 for

_____

[12] We need not reiterate the other legal errors alleged by Appellant for the purposes of this appeal.

[13] *See* Order, 6/17/22 (single page) ("Counsel on the record repeatedly accepted and asked for a withdraw [*sic*] with prejudice to correct the action to civil court. Due to his own action and the very detailed record of his withdraw [*sic*], this motion for reconsideration is denied with prejudice.") (cleaned up).

expenses and costs incurred by Ms. Waeyaert, as Executrix of the Estate. *Id.* at 3 (unnumbered).

Appellant filed a timely Response, in which he reiterated his claim that the Objection to Account "was[,] in substance[,] a petition to rescind the election that Ms. Simpson made to take under the Will[,] given fraud by Attorney Nolfi and the Executrix of the Will. The court had the ability to take the [Objection to Claim] as a petition to rescind the election as necessary to achieve justice." Response to Petition for Surcharge, 6/10/22, at ¶ 3. Moreover, he denied that the fees and expenses incurred by the Estate in connection with the Objection to Claim were due to bad faith conduct on the part of Ms. Simpson or Appellant. Rather, Appellant maintains that Ms. Simpson has a viable claim against the Estate due to the actions of Attorney Nolfi and the Executrix. *Id.* at ¶¶ 4, 7-8.

On August 15, 2022, the orphans' court issued an order granting the Estate's request for a surcharge and directing Appellant to pay fees and costs totaling $3,754.11.[14] Appellant filed a timely notice of appeal on September 6, 2022. The orphans' court subsequently directed Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of an appeal. Appellant timely complied, listing the following errors:

---

[14] Specifically, the surcharge amount consists of $881.50 in fees to be paid to Attorney Nolfi; costs in the amount of $82.61 to be paid to Ms. Waeyaert; and attorneys' fees and costs totaling $2,790.00 to be paid to Mr. Turin. Order, 8/15/22, at 1-2. The court expressly stated that the surcharge is to be paid by Appellant — not Ms. Simpson.

1. The court lacked jurisdiction to hear the matter giving rise to sanctions because the Register of Wills and the [orphans'] court never issued a citation against parties to be served, and the issuance of the citation is a prerequisite to the court having jurisdiction.

2. Even if the court had jurisdiction, … Appellant could not complete service as ordered because the citation was part of the package of documents to be served.

3. [] Appellant's conduct concerning the petition otherwise was not an appropriate basis for sanctions.

4. The court failed to provide sufficient due process of law to … Appellant and failed to hold a hearing on the matter to obtain additional evidence concerning sanctions and appropriate fees.

5. The sanctions awarded are unreasonable and excessive given the circumstances.

6. [] Appellant reserves the right to add additional matters to this statement as the record is assembled.

Appellant's Pa.R.A.P. 1925(b) Concise Statement, 10/3/22, at 1 (unnecessary capitalization omitted).

In response, the orphans' court filed its Rule 1925(a) opinion on October 25, 2022. Appellant now presents the following issues for our review:

1. Did the [Estate] waive its objections to the conduct used as the basis for sanctions by not raising them in a new matter when the Estate filed an answer to [Appellant's] Objection[ to Account]?

2. Was filing the Objection to Account itself vexatious conduct deserving of sanctions?

3. Assuming, *arguendo*, [Appellant] committed sanctionable conduct, did the orphans['] court inappropriate [*sic*] award sanctions without a hearing?

Appellant's Brief at 7 (unnecessary capitalization omitted).

Preliminarily, we observe that Appellant's first issue (regarding the Estate's purported waiver of its objections to Appellant's allegedly sanctionable conduct) was not included in his Rule 1925(b) concise statement and, therefore, we are constrained to deem this issue waived. **See** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."); **Greater Erie Indus. Development Corp. v. Presque Isle Downs, Inc.**, 88 A.3d 222, 225 (Pa. Super. 2014) ("[I]n determining whether an appellant has waived his issues on appeal based on non-compliance with Pa.R.A.P. 1925, it is the trial court's order that triggers an appellant's obligation[. T]herefore, we look first to the language of that order.") (internal quotation marks and citations omitted); Orphans' Court Order, 9/13/22 (single page) (warning Appellant that, "per Pa.R.A.P. 1925(b)(3)(iv), any issue not properly included in the Statement timely filed and served pursuant to subdivision (b) shall be deemed waived").

We address the merits of Appellant's remaining claims, mindful of the following:

> By statute, the trial court has the authority to order a party to pay the opposing side's attorneys' fees when the party's conduct has been, *inter alia*, vexatious or obdurate or in bad faith. **See** 42 Pa.C.S.[] § 2503(7) & (9); **Kulp v. Hrivnak**, 765 A.2d 796, 799 (Pa. Super. 2000); **State Farm Mutual Automobile Insurance Co. v. Allen**, … 544 A.2d 491, 494 ([Pa. Super.] 1988). A party has acted in bad faith when he files a lawsuit for purposes of fraud, dishonesty or corruption. **Berg v. Georgetown Builders, Inc.**, 822 A.2d 810, 816 (Pa. Super. 2003) (citing **Thunberg v. Strause**, … 682 A.2d 295, 299-300 ([Pa.] 1996)). A party's

conduct has been vexatious if he brought or continued a lawsuit without legal or factual grounds and if the suit served only to cause annoyance. ***Miller v. Nelson***, 768 A.2d 858, 862 (Pa. Super. [2001]) ... (citing ***Thunberg***, ***supra*** at ... 299). Obdurate is defined, *inter alia*, as "unyielding; stubborn." Funk and Wagnalls New Comprehensive International Dictionary of the English Language, Publishers International Press, Newark, N.J., 1982.

...

The trial court has great latitude and discretion with respect to an award of attorneys' fees pursuant to a statute. ***Cummins v. Atlas R.R. Construction Co.***, 814 A.2d 742, 746 (Pa. Super. 2002). In reviewing a trial court's award of attorneys' fees, our standard is abuse of discretion. ***Lucchino v. Commonwealth***, ... 809 A.2d 264, 269-70 ([Pa.] 2002); ***Miller***..., [768 A.2d at] 861.... If there is support in the record for the trial court's findings of fact that the conduct of the party was obdurate, vexatious or in bad faith, we will not disturb the trial court's decision. ***Lucchino***, ***supra*** ... [(citation omitted)]; ***Berg***, ***supra***...; ***Miller***, ***supra***...; ***Allen***, ***supra***....

***Scalia v. Erie Ins. Exchange***, 878 A.2d 114, 116-17 (Pa. Super. 2005). "[I]t is the burden of the party seeking counsel fees to prove the existence of one of the statutory conditions." ***Berg***, 822 A.2d at 816 (citations omitted). Moreover, we note that it is not the intent of Section 2503 to punish all those who initiate actions which ultimately fail, as such a course of action would have a chilling effect upon the right to raise a claim. ***Dooley v. Rubin***, 618 A.2d 1014, 1018 (Pa. Super. 1993) (citation omitted). "Rather, the aim of the rule [permitting the recovery of counsel fees] is to sanction those who knowingly raise, in bad faith, frivolous claims which have no reasonable possibility of success, for the purpose of harassing, obstructing or delaying the opposing party." ***Id.***

- 16 -

Instantly, in support of its award of a surcharge, the orphans' court opined that the Objection to Account was "improvidently filed." OCO at 3. The court explained:

It is clear that the objections made no assertions of error in the accounting, and the cause of action should have been either presented as a petition to take against the will under 20 Pa.C.S. § 2210[,] or a civil legal malpractice action. Whether or not the objections were served properly, they were still improper and caused an undue expense to the Estate which was remedied by the assessment of sanctions for fees and costs.

*Id.* (cleaned up). The court found Appellant's conduct to be "vexatious" on the grounds that the Objection to Account was filed "without an appropriate legal or factual basis[,]" and thus, it determined that such conduct was sanctionable under 42 Pa.C.S. § 2503(7) and (9). *Id.* at 4. *See also id.* ("It is clear that there was no basis in law or fact to cause [Appellant] to bring his cause of action in the format of [an] objection to the account.").

Appellant claims that the orphans' court erred in finding his filing of the Objection to Account was "vexatious[,]" on the grounds that his Objection to Account was "improvidently filed" and lacking "any basis in law or fact." Appellant's Brief at 10. Appellant contends, to the contrary, that the underlying basis for the filing did have merit, but that he mistakenly presented his argument in the wrong format and/or in the wrong forum. *Id. See also id.* at 17 (noting that the orphans' court never stated Ms. Simpson's underlying claims were meritless or that she could not recover; instead, the court focused on "how the underlying issue was placed in the wrong format and the wrong forum") (citation to record omitted). After an extended

- 17 -

discussion with the court at the June 6, 2022 hearing, Appellant points out that he "agreed to withdraw the Objection [to Account] and seek relief for the underlying injury another way." *Id.* at 17.[15] *See also id.* (emphasizing that the Estate's arguments concerning the appropriateness of the Objection to Account were raised for the first time at the hearing and that he withdrew the Objection to Claim at that same hearing "instead of seeking to pursue the … action … in the face of [the Estate's] and the [c]ourt's objections"). Appellant concludes that the record does not support a finding that his filing of the Objection to Account was vexatious and, therefore, the orphans' court award of attorneys' fees as a sanction against Appellant is inappropriate. *Id.* at 18. We agree with Appellant.

Pursuant to Section 2503 of the Pennsylvania Judicial Code, counsel fees may be awarded to a participant "as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter[,]" 42 Pa.C.S. § 2503(7), or "because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith." 42 Pa.C.S. § 2503(9). Any award of counsel fees under these statutory provisions, however, must be supported by a trial court's specific finding of such conduct. *See Kulp*, 765 A.2d at 799. While disposition of claims under Sections 2503(7) and (9) generally requires an evidentiary hearing, no

---

[15] Two days later, Appellant reframed the matter as a legal malpractice action and filed it against Attorney Nolfi in the Westmoreland County Civil Division at docket no. 1932 of 2022. OCO at 4.

hearing is necessary where the facts are undisputed. *In re Estate of Burger*, 852 A.2d 385, 391 (Pa. Super. 2004) (citing *Kulp*, 765 A.2d at 800). In the case *sub judice*, the orphans' court only made a finding of vexatious conduct; thus, we take a closer look at the meaning of "vexatious" in the context of sanctions awarded under Section 2503. *See* OCO at 4.[16]

It is well-established that a party's conduct is considered "vexatious" if it is done "without sufficient grounds in either law or in fact **and** … [with] the sole purpose of causing annoyance." *Thunberg*, 682 A.2d at 299 (citation omitted; emphasis added). *See also Moyer v. Leone*, 260 A.3d 245, 255 (Pa. Super. 2021) (emphasizing that a party's conduct can be deemed vexatious if it is done "without sufficient grounds in either law or in fact **and** … [with] the sole purpose of causing annoyance") (emphasis in original; citation omitted). This Court has upheld findings of vexatious conduct based on a continuing pattern which demonstrated that the litigation had no purpose but annoyance and where the party was clearly aware that his pleading lacked any legal basis and yet pursued his claim regardless. *See Scalia*, 878 A.2d at 116 ("[T]his Court upheld an award of attorneys' fees against a party after she, as an adopted individual, pursued a suit to inherit from her natural father's estate, knowing that the law prohibits adopted children from recovering from the estates of their natural parents." (citing *In re Estate of*

---

[16] The orphans' court opined that a hearing on the issue of sanctions was not necessary, as "[t]he sanctionable conduct is visible on the face of the record, both through the pleadings and upon a review of the transcript of the June 6, 2022 proceeding." OCO at 5.

*Liscio*, 638 A.2d 1019, 1021-22 (Pa. Super. 1994))); *Miller*, 768 A.2d at 861-62 (affirming an award of attorneys' fees where the plaintiff was advised repeatedly that his lawsuit was barred by the doctrine of immunity and that his suit had no legal basis or possible chance of success but engaged in a "relentless legal crusade" in pursuit of his claims); *Henry v. Henry*, 249 A.3d 1139 (Pa. Super. 2021) (unpublished memorandum) (affirming the trial court's award of counsel fees based on its finding that the father's conduct was vexatious where the father was aware that the allegations in his contempt petition were moot or lacking in legal basis and, nevertheless, he proceeded to court on the contempt petition for the sole purpose to cause annoyance).[17]

In contrast, we have determined that sanctions were not warranted where the plaintiff's claims were not wholly without merit, where the plaintiff reasonably believed that he had a valid claim, and absent evidence that the plaintiff acted in bad faith. *See, e.g.*, *Finder v. Crawford*, 167 A.3d 40, 46 (Pa. Super. 2017) (upholding the trial court's decision declining the award of attorneys' fees under 42 Pa.C.S. § 2503(7), where it had determined that the plaintiff's claims were "not without any basis in law or fact so as to exclude the possibility he was proceeding in good faith"); *In re Barnes Foundation*, 74 A.3d 129, 136 (Pa. Super. 2013) (reversing the trial court's imposition of sanctions, reasoning that the appellants' petition to reopen a proceeding was

_____

[17] *See* Pa.R.A.P. 126(b) (unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

"not wholly without legal or factual grounds[,]" even where the appellant "raise[d] some arguments previously determined by the court to be without merit, and his arguments at times verge[d] on scattered and disjunctive"); *Equibank v. Miller*, 619 A.2d 336, 338 (Pa. Super. 1993) (determining that the makers of a note were not entitled to recover attorneys' fees for the allegedly arbitrary and vexatious conduct of the holder of the note in repeatedly making mistakes by filing complaints and confessions of judgment on the wrong note; even though the holder retarded the disposition of the matter, these actions were not sufficiently sinister to support an award of attorneys' fees); *Santillo v. Robinson*, 557 A.2d 416, 417 (Pa. Super. 1989) (affirming the trial court's denial of a claim for attorneys' fees pursuant to 42 Pa.C.S. § 2503(9), where the plaintiffs dropped the defendant from the lawsuit after discovery and there was no evidence that the plaintiffs acted in an arbitrary or vexatious manner or in bad faith in commencing the suit; opining that while the plaintiffs' claim "may not have been a strong one …, the record [did] not indicate that the plaintiffs did not reasonably believe that their claim was valid under existing or developing law").

The issue currently before us is whether the record supports the orphans' court's finding Appellant's filing of the Objection to Claim to be vexatious. For further guidance on this matter, Appellant points us to *Dreibelbis v. State College Borough Water Authority*, 654 A.2d 52 (Pa. Cmwlth. 1994), an analogous case in which the Commonwealth Court of Pennsylvania reversed the trial court's order granting fees and costs under

Section 2503.[18]  Appellant's Brief at 18.  In ***Dreibelbis***, Mr. Dreibelbis sought an injunction against the Water Authority to prevent it from imposing a municipal lien on his property for connection fees that he had refused to pay; however, the action was dismissed several months later.  ***Dreibelbis***, 654 A.2d at 54.  Subsequently, the Water Authority moved for the recovery of counsel fees and costs incurred in connection with its defense of the injunction action, pursuant to Section 2503 of the Judicial Code, arguing that Mr. Dreibelbis had "stubbornly persisted in pursuing his injunction action even though, as stated in [its] answer to the injunction complaint, his remedy was at law." ***Id.***  The trial court granted the Water Authority's motion, finding Mr. Dreibelbis's filing of the injunction action to be "unreasonable" and "vexatious[.]"  ***Id.***  On appeal, Mr. Dreibelbis argued that his dismissed injunction action was not "arbitrary," "vexatious," or "in bad faith" under Section 2503.  ***Id.***  He explained that he did not want a lien clouding his title, that he wished to get the issue resolved, and that his original filing of the action in equity rather than at law was an "honest … mistake." ***Id.***

The Commonwealth Court of Pennsylvania concluded that the trial court erred in granting the Water Authority's motion and opined:

> We perceive no basis for a finding or conclusion that the injunction action was vexatious or commenced in bad faith.  Nor do we agree that [Mr.] Dreibelbis "stubbornly persisted in pursuing" his injunction petition simply because the [Water] Authority answered

---

[18] Although Commonwealth Court decisions are not binding on this Court, we note that they may be considered as persuasive authority. ***Commonwealth v. Heredia***, 97 A.3d 392, 395 n.4 (Pa. Super. 2014).

his injunction complaint with an assertion that a legal remedy existed. … [Mr.] Dreibelbis'[s] counsel originally proceeded in error in the manner he prosecuted the issue of liability for connection fees; shortly after the [Water] Authority's answer was filed, the trial court dismissed the equity action. We do not think this is a situation to which [S]ection 2503 was meant to apply. **Even if [Mr.] Dreibelbis incorrectly brought an injunction petition, he was nevertheless seeking to challenge the connection fees, which the [Water] Authority itself stated he had a right to do under 53 P.S. § 7182[,] and which, on the facts of this case, was not a challenge without foundation.**

*Id.* at 54-55 (emphasis added). The Court concluded that "the assessment of fees and costs was not warranted under [S]ection 2503[,]" and it reversed that part of the trial court's order granting counsel fees and costs. *Id.* at 55.

We regard the *Dreibelbis* Court's reasoning as particularly constructive in our analysis of the case *sub judice*. We believe that the record in the instant matter similarly establishes that Appellant mistakenly entitled his pleading as an Objection to Account, but that he intended to revoke Ms. Simpson's election and to exercise her right to elect to take against the decedent's Will,[19] which she had a right to do under the Judicial Code. *See* 20 Pa.C.S. §§ 2203, 2210. *See also* Pa.O.C.R. 5.4 (governing revocation of a surviving spouse's

---

[19] *See, e.g.*, OCO at 2 (acknowledging that the Objection to Account was void of any assertions of mistake in the account); Objection to Account at 5 (seeking a rule to show cause why Ms. Simpson should not be entitled to elect to take against the Will); N.T. Hearing at 18 (Appellant's indicating his intention to proceed on "the issue of whether … [Ms.] Simpson's election to take under the will was the product of fraud"); *id.* at 19 (Appellant's stating "it is our intention here to attack the election under the will"); *id.* at 28 (Appellant's explaining to the court that "we're trying to plead under [Section] 2210, an improper election and fraud in the election").

election).[20] We recognize that the time limit for filing an election has expired here. *See* 20 Pa.C.S. § 2210(b) (requiring the filing of a surviving spouse's election "before the expiration of six months after the decedent's death or before the expiration of six months after the date of probate, whichever is later"). However, a finding of actual fraud relieves the surviving spouse from this mandatory time requirement. *In re DiMarco's Estate*, 257 A.2d 849, 852 (Pa. 1969).[21] Thus, given Appellant's allegations of fraud against Attorney Nolfi and Ms. Waeyaert, the relief sought by Appellant was not lacking in foundation. Should Appellant be successful in proving actual fraud, an election to take against the Will could be deemed timely, depending on the timing of when the fraud occurred. *See id.* at 852-53 (stating that to warrant a finding of actual fraud, a surviving spouse seeking relief from the mandatory time requirement must present "clear, precise and convincing" evidence of "an intent to deceive on the part of the person or persons who misrepresented or misstated either a fact or the law").

Additionally, we emphasize that Appellant — like Mr. Dreibelbis — did not insist on pursuing his claim in the face of the Estate's objections and the orphans' court's position regarding the format in which he was seeking relief

---

[20] The orphans' court also admitted Ms. Simpson's right to elect to take against the Will. *See* OCO at 3 (stating that Appellant's cause of action "should have been either presented as a petition to take against the will under 20 Pa.C.S. § 2210 or a civil legal malpractice action").

[21] We note that the *DiMarco* Court interpreted former 20 P.S. §§ 180.11, 180.12 (now 20 Pa.C.S. § 2210).

on behalf of Ms. Simpson. Rather, he agreed to withdraw his Objection to Account at the initial hearing on the matter and then, heeding the court's recommendation, proceeded with the filing of a civil malpractice lawsuit against Attorney Nolfi. *See* Order, 6/8/22 (indicating that the Objection to Account is withdrawn with prejudice).

Finally, we observe that the orphans' court's handling of the Objection to Account may have contributed to the confusion over the format and substance of Appellant's filing, as its initial scheduling order expressly referred to the pleading, not as an objection to account, but as a "[p]etition for [c]itation to exercise [Ms. Simpson's] right to elect to take against her deceased husband's will[.]" Scheduling Order (single page). As such, it may have appeared to the parties that the orphans' court was exercising its discretion to elevate substance over form. *See* Pa.R.Civ.P. 126;[22] *Pomerantz v. Goldstein*, 387 A.2d 1280, 1282 (Pa. 1978) (explaining that Rule 126 "permits us to disregard procedural errors which do not affect substantial rights"); *Deek Investment, L.P. v. Murray*, 157 A.3d 491, 494 (Pa. Super.

---

[22] Pennsylvania Rule of Civil Procedure 126 provides:

> The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties.

Pa.R.Civ.P. 126. Pennsylvania Orphans' Court Rule 1.2 similarly allows the court to "disregard any error or defect of procedure that does not affect the substantive rights of the parties in interest." Pa.O.C.R. 1.2(a).

2017) ("Rule 126 does not excuse a party's complete noncompliance with the rules, but Rule 126 is available to a party who makes a substantial attempt to conform.") (citation omitted).  ***See also Pomerantz***, 387 A.2d at 1281 (vacating the trial court's dismissal of the appellant's "exceptions" where the appellant had substantively complied with Pa.R.Civ.P. 1038(d) (governing the filing of exceptions to a court's decision in a nonjury trial and disallowing the filing of a motion for new trial), but mistakenly captioned his exceptions as a "motion for new trial").[23]

Nevertheless, at the hearing, the orphans' court strictly enforced the form of the pleading over its substance.[24]  ***See*** N.T. at 7-10, 16-19, 22-23, 27-29 (the orphans' court's directing Appellant to demonstrate how his filing complies with Rule 2.7, governing objections to accounts; insisting that the issue regarding whether Ms. Simpson's election to take under the Will was the

---

[23] The ***Pomerantz*** Court explained:

> Had the pleading been properly titled, it would have been disposed of on the merits, rather than upon the erroneous caption.  It has been our policy to overlook such procedural errors when a party has substantially complied with the requirements of the rule and no prejudice would result.  "Procedural rules are not ends in themselves, but means whereby justice, as expressed in legal principles, is administered.  They are not to be exalted to the status of substantive objectives."

***Pomerantz***, 387 A.2d 1281 (quoting ***McKay v. Beatty***, 35 A.2d 264, 265 (Pa. 1944)).

[24] We acknowledge that Rule 126 is discretionary.  ***See Anderson v. Centennial Homes, Inc.***, 594 A.2d 737, 739 (Pa. Super. 1991) ("[W]hile the trial court may ignore procedural noncompliance, it is not required to do so.") (citing Pa.R.Civ.P. 126).

product of fraud and her request to exercise her right to elect to take against the Will are not before the court; and instructing Appellant to "withdraw this objection of the account and file with regard to the election under the will"). ***But see*** Objection to Account at 5 (requesting that the orphans' court "issue a citation" to the Executrix and Attorney Nolfi and require them "to show cause why[,] … given these circumstances[,] Ms. Simpson should not be entitled to elect to take against the will and take her statutory share").[25]

After careful review of the record and relevant law, we do not believe that the Objection to Account was wholly without any basis in law or in fact, nor do we discern any indication that Appellant filed the Objection to Account for the sole purpose of causing annoyance. ***See Thunberg***, ***supra***. Appellant did not exhibit a continuing pattern of conduct demonstrating bad faith, nor did he relentlessly pursue his claim knowing he had no possible chance of success. ***See Henry***, ***supra***; ***Miller***, ***supra***. Rather, Appellant has demonstrated that he was seeking to rectify the alleged improper election on behalf of Ms. Simpson, but proceeded in an improper manner. We do not believe that Section 2503 sanctions were intended to punish a party such as Appellant, who reasonably believed he had a viable claim but made a procedural error in attempting to pursue that claim — especially where Appellant withdrew the pleading upon learning of his error. ***See Dooley***, 618

---

[25] Nothing herein shall be construed as a determination by this Court as to whether Appellant substantially complied with the applicable rules or whether any prejudice would result from the overlooking of any alleged procedural errors.

A.2d at 1018 (stating that "the aim of the rule [permitting the recovery of counsel fees] is to sanction those who knowingly raise, in bad faith, frivolous claims which have no reasonable possibility of success, for the purpose of harassing, obstructing or delaying the opposing party").

Based on the foregoing, we do not believe the record supports the orphans' court's finding that Appellant's filing of the Objection to Account was "vexatious" and, thus, we conclude the award of sanctions under Section 2503 was unwarranted. Accordingly, we reverse the orphans' court's August 15, 2022 order granting the Estate's petition for surcharge.[26]

Order reversed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 10/31/2023

---

[26] Due to our disposition in this matter, we need not reach the merits of Appellant's third issue concerning the reasonableness of the amount of sanctions awarded.