J-A29019-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF JAMES G. KLINGENSMITH, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: JOSEPH G. KLINGENSMITH AND JOHN A. KLINGENSMITH | : | |
| | : | No. 550 WDA 2024 |

Appeal from the Order Entered April 10, 2024
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  02-11-04852

BEFORE:  OLSON, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY LANE, J.:                    **FILED: April 29, 2025**

Siblings Joseph G. Klingensmith ("Joseph") and John A. Klingensmith ("John") (collectively, "Appellants") appeal from the decree of distribution of the estate of their father, James G. Klingensmith ("Decedent").  In their appeal, Appellants challenge the Orphans' Court's January 20, 2021 order awarding their sister-in-law Cynthia Klingensmith ("Cynthia") attorneys' fees and costs in the amount of $36,108.16.  Also before this Court is Cynthia's application for attorneys' fees and costs associated with this appeal and prior appeals in this matter.  We affirm the Orphans' Court's award of attorneys' fees and costs and deny Cynthia's application.

Decedent had three sons: Joseph, John, and James C. Klingensmith ("James").  James and Cynthia married in 2005.  That same year, Decedent, who was a widower, moved into a residence with James and Cynthia.  Decedent continued to reside with James and Cynthia until his death in 2011.

Consistent with the provisions of Decedent's will, letters testamentary were issued to James. In 2012, James filed an inventory of Decedent's estate — which identified, *inter alia*, twelve pieces of jewelry as Decedent's property — and an inheritance tax return. In 2013, Appellants filed a petition for a citation to show cause why James should not file an account of his administration of Decedent's estate. After a court conference, James agreed to provide an informal accounting to all beneficiaries.

James died on August 22, 2015, one month after a pancreatic cancer diagnosis. In September 2015, letters testamentary were issued to Appellants, in accordance with the terms of Decedent's will.

In November 2015, Appellants filed a petition for a citation directing Cynthia to appear for deposition and bring with her certain jewelry that allegedly belonged to Decedent's estate. Cynthia filed an answer and new matter, in which she alleged that Decedent gave her the disputed jewelry prior to his death. Cynthia further sought the return of personal property, including jewelry, allegedly removed from her home and a safe deposit box by James' adult children, Janeen Hughey ("Janeen") and James J. Klingensmith ("Jimmy").

The Orphans' Court conducted a two-day bench trial on July 30 and 31, 2018. Pertinent to our analysis here, Janeen and Jimmy testified that in August 2015, weeks before James' death, they removed jewelry from James and Cynthia's home and safe deposit box at their father's request. *See* N.T., 7/30/18, at 61-67, 77-86, 108-12. Janeen stated her father told her that

Cynthia "hid a lot of things" that did not belong to her, including jewelry, and "he needed to make things right" before he died. *Id*. at 62, 79; *see also id*. at 109 (Jimmy testifying his father said he "want[ed] to make things right" and determine if Cynthia had retained any jewelry belonging to Decedent). According to Janeen and Jimmy, they showed James each piece of jewelry in Cynthia's jewelry box, her armoire, and the safe deposit box and only removed the items that their father stated belonged to Decedent's estate. *See id*. at 64-67, 80-86, 109-11. Janeen and Jimmy testified that, after they removed the jewelry, they "handed it to [their uncle Joseph and told him it was] now [his] burden." *Id*. at 68, 112-13.

The Orphans' Court determined that Cynthia's account of the removal of the jewelry was more credible than that of Janeen and Jimmy. The court found Janeen and Jimmy

> had, without the consent of or prior knowledge of James or . . . Cynthia[] entered and searched the home of James and Cynthia in an apparent search for estate assets. Those individuals, without permission, removed all jewelry from Cynthia's jewelry box and from her armoire during a time that Cynthia was hospitalized.
>
> [Cynthia's counsel:] How long were you at [the hospital]?
>
> [Cynthia:] I was sick — it was about six days, and while I was there, they cleaned out all of my bank accounts. They cleaned out the safety [*sic*] deposit box. They raped my house. They took pictures off the walls. They took clothing. They took jewelry. They took everything and anything they wanted out of my house.
>
> [N.T., 7/30/18, at 200.] Additionally, without prior knowledge or consent of James or Cynthia, a PNC Bank safe deposit box which had been jointly leased by James and Cynthia was opened with a

key apparently obtained during the search for personalty at the home of James and Cynthia.

Orphans' Court Opinion, 5/13/22, at 2-3. The court found that Janeen and Jimmy undertook their search for property at the direction of Appellants. *See id*. at 3 (stating that Appellants lacked authority "to enter or direct others to enter" James and Cynthia's home and access their safe deposit box).

At the conclusion of trial, Appellants returned to Cynthia the engagement ring she received from James — which was removed from the safe deposit box three years prior — apologizing for the "mixup." N.T., 7/31/18, at 356-57. In its post-trial ruling, the Orphans' Court found that Cynthia established by clear and convincing evidence that Decedent gave her approximately ten pieces of the disputed jewelry during his lifetime. *See* Order, 12/18/18, at 9-10, 12. However, the court directed Cynthia to return five pieces of jewelry that appeared on the estate inventory James filed in 2012, as well as any sports memorabilia that she retained. *See id*. at 7-8, 11-12.

In 2019, Appellants filed a notice of appeal from the Orphans' Court's order. Another panel of this Court found their challenges to the ruling meritless, adopting the reasoning set forth in the Orphans' Court's opinion. *See In re Estate of Klingensmith*, 224 A.3d 809 (Pa. Super. 2019) (unpublished memorandum), *appeal denied*, 233 A.3d 678 (Pa. 2020). However — because the record evidence showed, and Appellants had acknowledged, that Cynthia was not in possession of the jewelry items the

Orphans' Court's order instructed her to return — we vacated the order and remanded for the court to correct its order. **See id**. at *3. Appellants filed a petition for allowance of appeal, which our Supreme Court denied.

On July 7, 2020, following remand, Cynthia filed a petition to implement this Court's instructions and the underlying petition for an award of reasonable attorneys' fees and costs. The Orphans' Court held a hearing on the petitions at which Cynthia's counsel appeared, but neither Appellants nor their counsel were present. The court entered an order after the hearing awarding Cynthia $55,648.16 in attorneys' fees and costs. Appellants filed a motion for reconsideration of the order, which the court granted. After further argument, at which counsel for all parties were present, the court entered an order on January 20, 2021, awarding Cynthia $36,108.16 in attorneys' fees and costs.[1] On that same date, the court filed an order, correcting the distribution of the disputed jewelry to require their return to Cynthia.

Appellants filed a notice of appeal from the January 20, 2021 fee award, which this Court quashed as interlocutory. Following entry of the decree of distribution of Decedent's estate, Appellants filed the instant timely notice of

---

[1] The Orphans' Court reduced its award pursuant to the parties' agreement that the court lacked jurisdiction to award fees and costs associated with work Cynthia's counsel performed responding to Appellants' appeals. **See S.B. v. S.S**., 183 A.3d 344 (Pa. 2018) (*per curiam* order) (providing that only the appellate court possesses authority to grant counsel fees in connection with legal work performed on an appeal).

appeal. Both Appellants and the Orphans' Court have complied with Pa.R.A.P. 1925.[2]

Appellants present the following issues for our review:

1. Did the [O]rphans' [C]ourt err or abuse its discretion by awarding attorneys' fees and costs against Appellants where the record is free from any evidence that Appellants, individually or as co-executors, engaged in any form of dilatory, obdurate, vexatious, or otherwise improper conduct during the pendency of the Orphans' Court litigation?

2. Did the [O]rphans' [C]ourt err or abuse its discretion by awarding attorneys' fees and costs against Appellants where the Orphans' Court order awarding fees was made without a hearing, without issuing findings of facts as to any alleged improper conduct, and without specifying or identifying any alleged misconduct by Appellants in any capacity during the pendency of the Orphans' Court litigation?

3. Did the [O]rphans' [C]ourt err or abuse its discretion by awarding attorneys' fees and costs against Appellants in their individual capacities when the action Appellants filed in the Orphans' Court was brought solely in Appellants' capacities as co-executors of the estate and Appellants, as individuals, were never properly subjected to the jurisdiction of the Orphans' Court?

4. Did the [O]rphans' [C]ourt err or abuse its discretion by awarding attorneys' fees and costs against Appellants in their individual and fiduciary capacities in a proceeding in which [Cynthia] failed to abide by the law and rules of court and failed to properly join Appellants in their individual capacities, thereby depriving Appellants of due process and the court of subject matter jurisdiction[?]

5. Did the [O]rphans' [C]ourt err or abuse its discretion by awarding attorneys' fees and costs to [Cynthia] against

---

[2] The Orphans' Court filed two opinions addressing the issues raised in this appeal: (1) a May 13, 2022 opinion in connection with Appellants' initial appeal of the fee award; and (2) a July 9, 2024 opinion for the instant appeal.

Appellants after Appellants had successfully prosecuted a contested case against [Cynthia] to recover a substantial portion of their claim against [Cynthia]?

6. Did the [o]rphans' [c]ourt err or abuse its discretion by awarding attorneys' fees and costs to [Cynthia] against Appellants after [Cynthia] failed to file her request for attorneys' fees and costs for more than two years and six months after the conclusion of the distinct proceeding upon which [Cynthia] based her request for fees and costs?

Appellants' Brief at 4-5 (suggested answers omitted).

While Appellants present six questions for our review, they divide the argument section of their brief into five subsections, and the arguments presented in two of those subsections substantially overlap. Accordingly, we discern Appellants present four discrete challenges to the Orphans' Court's fee award. First, they argue that the court abused its discretion by finding that their conduct was dilatory, obdurate, and vexatious and that the court did not sufficiently state the reasons for its ruling. Second, Appellants aver that the court erred by not holding an evidentiary hearing on Cynthia's fee petition. Third, Appellants contend that the court did not obtain personal jurisdiction over them in their individual capacities and could not enter an award for fees and costs against them in those capacities. Finally, they assert that Cynthia did not timely file her fee petition.

In their first issue, Appellants challenge the merits of the Orphans' Court's award directing them to pay Cynthia's attorneys' fees and costs. We review an Orphans' Court ruling to determine whether the court committed an

abuse of discretion or error of law.  ***See In re Fiedler***, 132 A.3d 1010, 1018 (Pa. Super. 2016) (*en banc*).

> We must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the [O]rphans' [C]ourt sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.

***In re Estate of Schwartz***, 275 A.3d 1032, 1033 (Pa. Super. 2022) (citations omitted).

> We further observe that:
>
> The trial court has great latitude and discretion with respect to an award of attorneys' fees pursuant to a statute.  In reviewing a trial court's award of attorneys' fees, our standard is abuse of discretion.  If there is support in the record for the trial court's findings of fact that the conduct of the party was obdurate, vexatious or [otherwise satisfied the statutory requirements for an award of fees], we will not disturb the trial court's decision.

***In re Estate of Simpson***, 305 A.3d 176, 186 (Pa. Super. 2023) (citations omitted).

The party seeking attorneys' fees bears the burden of demonstrating her entitlement to fees pursuant to statute.  ***See id***.  Here, Cynthia sought — and the Orphans' Court awarded — fees pursuant to 42 Pa.C.S.A. § 2503(7). This statute provides:

> The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:
>
> * * * *

> (7) Any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter.

42 Pa.C.S.A. § 2503(7).

> Vexatious conduct is without reasonable or probable cause or excuse; harassing; annoying. . . . [G]enerally speaking, obdurate conduct may be defined in this context as stubbornly persistent in wrongdoing. Conduct is dilatory where the record demonstrates that counsel displayed a lack of diligence that delayed proceedings unnecessarily and caused additional legal work.

***County of Fulton v. Secretary of Commonwealth***, 292 A.3d 974, 1014 (Pa. 2023) (citations, quotation marks, and emphases omitted). Because Section 2503(7) reads in the disjunctive, a trial court need only find that defendants engaged in dilatory, vexatious, ***or*** obdurate conduct when awarding counsel fees. ***See Thunberg v. Strause***, 682 A.2d 295, 301 n.7 (Pa. 1996) (construing similar provision in Section 2503(9)).

Appellants argue that the Orphans' Court did not specify what conduct they engaged in, either in their individual or fiduciary capacities, warranting the imposition of attorneys' fees. Appellants assert that the uncontroverted evidence showed that they had no involvement in the removal of the jewelry; rather, James' children, Janeen and Jimmy, removed Cynthia's jewelry from her home and safe deposit box in the presence of and on the instructions of their father. They contend that the removal of the jewelry did not implicate their fiduciary obligations to Decedent's estate as they did not become co-executors of the estate until after James' death.

Appellants further argue that the imposition of sanctions related to acts committed **prior** to their initiation of legal action against Cynthia "was error, as '[c]onduct prior to or following the pendency of the action cannot . . . form a basis for an award of counsel fees.'" Appellants' Brief at 30-31 (*quoting* ***Westmoreland Cnty. Indus. Dev. Auth. v. Allegheny Cnty. Bd. of Prop. Assessment, Appeals & Review***, 723 A.2d 1084, 1086 (Pa. Cmwlth. 1999)). Finally, Appellants maintain that, because they were partially successful in their action against Cynthia, "it cannot be conclusively concluded without further evidence that they engaged in either obdurate or vexatious conduct." ***Id***. at 29.

Contrary to Appellants' claim, the Orphans' Court specifically found that Appellants' participation in the unauthorized removal of property from James and Cynthia's home and safe deposit box was vexatious and obdurate:

> Joseph and John could have, by proper pleading, pursued any personalty of the Decedent which they believed may have been excluded from the estate inventory that James had filed during his tenure as executor. Regardless of any suspicions that any heir might have had that some items [of] personalty belonging to the estate had been sequestered at a residence or in the safe deposit box, no heir possessed a license to access, without authorization or consent, the safe deposit box or to enter or direct others to enter the home of James and Cynthia for the purpose of discovering and seizing personalty based upon a suspicion that estate personalty had been misappropriated or, as yet, unaccounted for by the executor.

Orphans' Court Opinion, 5/13/22, at 3.

The Orphans' Court further determined that Appellants' misconduct extended to their retention of the disputed jewelry and the filing of an action

against Cynthia in their official capacities as representatives of Decedent's estate:

> Some portion of the personalty taken from the residence of James and Cynthia, including items from Cynthia's jewelry box and armoire, was determined not to be property of the estate, but Cynthia's own jewelry. Appellants' obdurate conduct in their fiduciary capacity compounded the administration of the estate, a consequence which was entirely foreseeable.

*Id*. at 4-5. Finally, the court rejected Appellants' claim that the award of fees and costs was improper in light of their partial success in their action against Cynthia. The court emphasized that "[u]nder such reasoning, an ultimately meritorious claim would license any litigant to take any property by any means." *Id*. at 4.

Based on our review, we conclude that the Orphans' Court did not abuse its discretion in finding that Appellants engaged in vexatious and obdurate conduct meriting an award of attorneys' fees to Cynthia. *See Estate of Simpson*, 305 A.3d at 186. The record supports the court's conclusion that Appellants acted "without reasonable or probable cause" when they participated in the unauthorized removal of Cynthia's jewelry from her home and safe deposit box. *County of Fulton*, 292 A.3d at 1014 (defining "vexatious" conduct). Furthermore, the evidence shows that Appellants were "stubbornly persistent in wrongdoing" by retaining the disputed jewelry, much of which rightfully belonged to Cynthia, throughout the pendency of the action. *Id*. (defining "obdurate" conduct). As there is record support for the Orphans' Court's factual findings, we may not revisit the court's conclusion that

Appellants acted vexatiously and obdurately in connection with the litigation below. *See Estate of Simpson*, 305 A.3d at 186.

Additionally, the Orphans' Court did not abuse its discretion by considering Appellants' conduct committed prior to the commencement of the litigation against Cynthia when awarding counsel fees. While a party's pre-litigation conduct is generally not relevant under Section 2503, a court may consider such conduct when "it bears upon a party's" reasons for pursuing a lawsuit. *Siana v. Noah Hill, LLC*, 322 A.3d 269, 280 (Pa. Super. 2024). Here, the court properly considered Appellants' participation in the removal of the jewelry as bearing on their decision to take legal action to return that property to Decedent's estate. *See id*. (holding that party's pre-litigation threats and seizure of a truck were relevant to assess whether the party's filing of action was vexatious). In any event, the Orphans' Court equally emphasized Appellants' "obdurate" conduct in retaining the disputed jewelry, the majority of which rightfully belonged to Cynthia, throughout the duration of the litigation against her. *See* Orphans' Court Opinion, 5/13/22, at 4-5.

Finally, we agree with the Orphans' Court that the return of some of the jewelry to the estate did not preclude the award of attorneys' fees to Cynthia. We emphasize that Appellants were only *partially* successful in their action to recover Decedent's personal property, and the court ordered the return of the bulk of the disputed jewelry items to Cynthia. The items wrongfully removed from Cynthia's possession included property that had never belonged to Decedent, including the engagement ring she received from James.

Moreover, as the Orphans' Court stated, even if Appellants had recovered the entirety of the disputed property, that end would not have justified the improper means by which they obtained the property. Accordingly, no relief is due on Appellants' first issue.

In their second issue, Appellants argue that the Orphans' Court erred by not holding an evidentiary hearing on Cynthia's fee petition. "While disposition of claims under Section[] 2503(7) . . . generally requires an evidentiary hearing, no hearing is necessary where the facts are undisputed." *Estate of Simpson*, 305 A.3d at 187.

Appellants contend that the Orphans' Court was required to convene an evidentiary hearing, where the factual allegations in Cynthia's fee petition "were very much in dispute." Appellants' Brief at 23. Appellants assert that the court improperly treated the allegations in the fee petition as evidence, even though Cynthia noticed it as a motion under the local rules, and therefore they did not have an opportunity to file a responsive pleading. Appellants aver that, after the Orphans' Court granted reconsideration of its initial order awarding fees to Cynthia, the "court should have allowed Joseph and John proper time to respond to the fee petition and scheduled the matter for an evidentiary hearing." *Id*. at 26.

Based on our review, we conclude that the Orphans' Court did not err or abuse its discretion when granting Cynthia's fee petition without holding an evidentiary hearing. *See Fiedler*, 132 A.3d at 1018. The parties fully litigated the issues related to the removal of the disputed jewelry from James

and Cynthia's home and safe deposit box at the two-day trial in July 2018. The Honorable Michael E. McCarthy presided over both the trial and the fee petition and therefore was intimately familiar with the facts of the case. Appellants have not identified any evidence they would have presented at an evidentiary hearing on the fee petition that was not already before Judge McCarthy. Additionally, although Appellants requested an evidentiary hearing in their motion for reconsideration, at oral argument following the court's grant of reconsideration, Appellants did not seek to present evidence to rebut the allegations in Cynthia's fee petitions.[3] Therefore, Appellants' second issue merits no relief.

In their third issue, Appellants argue that the fee award was a nullity because the Orphans' Court lacked jurisdiction over them in their individual capacities. "In the [O]rphans' [C]ourt, a citation is the proper process by which initial personal jurisdiction over the person is obtained." *In re Hicks'* *Estate*, 199 A.2d 283, 285 (Pa. 1964). Pursuant to 20 Pa.C.S.A. § 764, "Jurisdiction of the person shall be obtained by citation to be awarded by the [O]rphans' [C]ourt division upon application of any party in interest." *Id*. Rule of Orphans' Court Procedure 3.5(a)(1) provides:

---

[3] We note that the transcript of the September 15, 2020 argument does not appear in the certified record. However, because the supplemental reproduced record contains the September 15, 2020 transcript and there is no dispute regarding the accuracy of the reproduction, we may consider it in this appeal. *See Nicolaou v. Martin*, 195 A.3d 880, 884 n.5 (Pa. 2018).

- 14 -

> When personal jurisdiction is required and has not previously been obtained or conferred by statute, or when a citation is otherwise required by statute, the petition shall include a preliminary decree for the issuance of a citation to those interested parties for whom a citation is necessary to show cause why the relief requested in the petition should not be granted.

Pa.R.O.C.P. 3.5(a)(1).

"It is well-settled that a party may either expressly or impliedly consent to a court's personal jurisdiction. In other words, a party may affirmatively state his consent or take such steps or seek such relief that manifest his submission to the court's jurisdiction over his person." ***Wagner v. Wagner***, 768 A.2d 1112, 1120 (Pa. 2001) (citation omitted). Our Supreme Court has recognized that a party who enters a general appearance in Orphans' Court consents to the court's personal jurisdiction. ***See Hicks' Estate***, 199 A.2d at 285; ***see also In re Estate of Albright***, 545 A.2d 896, 902 (Pa. Super. 1988) (holding that Orphans' Court obtained personal jurisdiction over partnership that appeared at hearings without noting its special appearance for the purpose of challenging the court's jurisdiction).

Appellants argue they have "at all times acted in their capacities as co-executors . . . since their claim against Cynthia for the return of the" disputed jewelry. Appellants' Brief at 27-28. Because they were not parties to the action in their individual capacities, Appellants assert Rule 3.5(a) required Cynthia to include in her fee petition a preliminary decree for the issuance of a citation against them. As Cynthia's fee petition did not conform to the rule, Appellants aver that the Orphans' Court lacked jurisdiction over them in their individual capacities and the fee award was a nullity.

The Orphans' Court rejected this claim, reasoning as follows:

The docket discloses . . . that Joseph and John had commenced litigation in this matter in October 2013 in their individual capacities, as beneficiaries of the estate. It was only subsequent to the death of the original executor, James . . ., that Joseph and John were designated as successor co-executors. From the point of that designation forward, Joseph and John each functioned as a co-executor, and each remained, as well, a beneficiary of the estate.

Orphans' Court Opinion, 5/13/22, at 5.

Upon review, we agree with the Orphans' Court that it obtained personal jurisdiction over Appellants in their individual capacities when they filed a petition challenging James' administration of the estate in 2013. By entering their general appearance, Appellants consented to the court's jurisdiction over them. *See Hicks' Estate*, 199 A.2d at 285; *see also Estate of Albright*, 545 A.2d at 902. It is immaterial that Cynthia was not a party to this matter in 2013, as personal jurisdiction concerns a party's relationship to the forum, rather than to another litigant or the specific claims asserted. *See Hammons v. Ethicon, Inc.*, 240 A.3d 537, 559 (Pa. 2020). Therefore, because the Orphans' Court had "previously . . . obtained" personal jurisdiction over Appellants in their individual capacities, Cynthia's fee petition did not require a preliminary decree for the issuance of a citation against Appellants. Pa.R.O.C.P. 3.5(a)(1). No relief is due on Appellants' third issue.

In their final issue, Appellants claim that Cynthia did not timely file her fee petition in the Orphans' Court. "It is well-established that timeliness is jurisdictional, as an untimely appeal divests this Court of jurisdiction to hear

the merits of the case. The timeliness of an appeal is a question of law. Accordingly, our scope of review is plenary and our standard of review is *de novo*." ***Delaware Valley Landscape Stone, Inc. v. RRQ, LLC***, 319 A.3d 551, 556 (Pa. Super. 2024) (italicization added).

"A petition for counsel fees under Section 2503 is not a separate suit for fees, but rather, a matter connected to but ancillary to the underlying action." ***Szwerc v. Lehigh Valley Health Network, Inc.***, 235 A.3d 331, 336 (Pa. Super. 2020) (citation and quotation marks omitted). Therefore, a party may file a fee petition up to thirty days after a judgment or final order, even if an appeal has already been filed in the matter. ***See id***. (*citing* Pa.R.A.P. 1701(a), (b)(1)). However, pursuant to 42 Pa.C.S.A. § 5505,[4] a trial court loses jurisdiction to consider any fee petition filed more than thirty days after a judgment or final order. ***See id***. at 336, 339. Therefore, in ***Szwerc***, we affirmed the trial court's ruling that it lacked jurisdiction to consider a petition for counsel fees filed more than six months after the entry of judgment that finally resolved the case. ***See id***. at 339.

Relying on ***Szwerc***, Appellants argue that Cynthia could only have filed her fee petition in the thirty-day period ***after*** the Orphans' Court's entry of a final, appealable order. Accordingly, Appellants assert that Cynthia had to file

---

[4] Section 5505 states, "Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed." 42 Pa.C.S.A. § 5505.

her fee petition either: (1) within thirty days of the December 11, 2018 Orphans' Court order that resolved the litigation regarding the disputed jewelry; or (2) within thirty days of the April 10, 2024 decree of distribution, the final order for the purposes of this appeal. Because Cynthia did not file the fee petition within those two thirty-day periods, Appellants assert that the Orphans' Court lacked jurisdiction to enter the fee award.

The Orphans' Court rejected Appellants' claim of untimeliness as to the fee petition, observing that, on November 27, 2019, this Court vacated the Orphans' Court's December 11, 2018 order and remanded with instructions. The Orphans' Court explained that, following our Supreme Court's denial of Appellants' petition for allowance of appeal from our November 27, 2019 order, "jurisdiction was revested in th[e Orphans'] Court to issue an order conforming to the Superior Court's instructions." Orphans' Court Opinion, 7/9/24, at 1 (unnumbered). The Orphans' Court concluded that Cynthia's July 7, 2020 fee petition, filed after the revesting of jurisdiction and prior to entry of a post-remand final order, was thus timely.

Based on our review, we conclude that Cynthia timely filed her fee petition. *See Delaware Valley Landscape Stone*, 319 A.3d at 556. While *Szwerc* establishes the point when a trial court loses jurisdiction to consider a petition for counsel fees filed *after* the entry of a final order, the decision does not address whether a court may consider a fee petition filed *prior* to a final order, as occurred here. However, as this Court has explained, a party need not wait until after the entry of a final order to file a fee petition:

> As an ancillary matter, a counsel fee petition can be litigated (1) before judgment, . . . **see Hart v. Arnold**, 884 A.2d 316, 325 (Pa. Super. 2005), (2) after judgment, **Szwerc**, 235 A.3d at 336 (party may file petition for counsel fees within thirty days after entry of judgment), or even (3) after an appeal is taken, **id.**; **see also Samuel-Bassett v. Kia Motors America, Inc.**, 34 A.3d 1, 48 (Pa. 2011) ("if the petition for counsel fees is timely filed [within thirty days of a final order], the trial court is empowered to act on it after an appeal is taken").

**Siana**, 322 A.3d at 277-78 n.6 (addressing merits of fee petition filed after trial verdict but prior to entry of judgment); **see also Hart**, 884 A.2d at 325, 342-43 (same).

Here, this Court vacated the Orphans' Court's December 11, 2018 final order and remanded the record for further proceedings on November 27, 2019. Cynthia filed her fee petition on July 7, 2020, following remand and prior to the court's entry of a new final order. Therefore, Cynthia's fee petition was timely. **See Siana**, 322 A.3d at 277-78 n.6. Appellants' final issue merits no relief.

Having disposed of Appellants' issues, we now consider Cynthia's application for relief, filed with this Court, to assess attorneys' fees and costs against Appellants in connection with this appeal.[5] An appellate court may award costs, including attorneys' fees, "as may be just," if it determines an

---

[5] Cynthia also requests that we direct Appellants to pay her attorneys' fees and costs associated with Appellants' prior appeals in this matter. However, because an appellate court may not award fees retroactively based on a party's conduct in prior appeals, we confine our review to the instant appeal. **See Menna v. St. Agnes Med. Ctr.**, 690 A.2d 299, 304-05 (Pa. Super. 1997) (stating that "the issue of whether an appeal is frivolous is determined at the time that the appeal is taken or is thereafter waived").

appeal "is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious." Pa.R.A.P. 2744. "In determining the propriety of such an award, we are guided by the principle that an appeal is not frivolous simply because it lacks merit; rather, it must be found that the appeal has no basis in law or fact." *In re Estate of Tomcik*, 286 A.3d 748, 766 (Pa. Super. 2022) (citation and brackets omitted).

Here, we do not find that Appellants engaged in dilatory, obdurate, or vexatious conduct in connection with this appeal. Furthermore, while we ultimately concluded that Appellants' appellate issues do not merit relief, they did not lack a basis in law or fact. Accordingly, we deny Cynthia's application for attorneys' fees and costs.

Order affirmed. Cynthia Klingensmith's application for relief denied.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

4/29/2025