J-A10009-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF VIRGINIA C. MULLIGAN, DECEASED | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: JAMES DOHERTY AND MARY LOU DOHERTY | : : : : : : : | No. 1912 EDA 2024 |

Appeal from the Order Entered June 21, 2024
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s):  2019-X4018

BEFORE:   PANELLA, P.J.E., BECK, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.:                    **FILED JUNE 10, 2025**

James and Mary Lou Doherty ("Appellants") appeal from the order entered in the Court of Common Pleas of Montgomery County Orphans' Court granting Appellees' Petition for Award of Attorneys' Fees and Costs pursuant to 42 Pa.C.S.A. § 2503 and awarding fees and costs, jointly and severally, against Appellants in the amount of $67,126.44 plus interest. After careful consideration, we affirm.

The orphans' court summarized the factual and procedural history underlying the instant matter as follows:

> Decedent, [Virginia Mulligan,] a resident of Montgomery County, died on November 1, 2019. On November 8, 2019, the Register of Wills granted Letters Testamentary to Co-Executrices, after which they diligently undertook the necessary steps to promptly administer Decedent's Estate. Nearly one year later, on October

_____

[*] Retired Senior Judge assigned to the Superior Court.

15, 2020, Mary Louise Doherty, Esq., filed a claim on behalf of her son, James Doherty, seeking $210,350.00 in liquidated damages and alleged overdue rent, sought with respect to an agreement of sale for real estate and a residential lease for an apartment occupied by [Decedent's] son.

On or about November 6, 2020, Co-Executrices retained fiduciary litigation counsel to represent them in the underlying matter. On September 29, 2021, Co-Executrices filed an Account and Petition for Adjudication, to which Mary Louise Doherty filed objections, restating James Doherty's prior claims.

By Order dated June 10, 2022, the Supreme Court of Pennsylvania disbarred Mary Louise Doherty (Pa. Attorney ID 20568) (aka Mary Lou Doherty) from the practice of law in the Commonwealth of Pennsylvania. *See In Re: Mary Louise Doherty*, 27 DB 2022. Given the patently frivolous nature of [Appellants'] claims and objections, counsel for Co-Executrices in June 2022 put both Mary Lou, and subsequent counsel for James Doherty, Mr. Samuel C. Stretton, Esq., on notice of Co-Executrices' intent to invoke 42 Pa.C.S. § 2503 and seek judgment against James Doherty and his counsel for the attorneys' fees and costs incurred on behalf of the Estate in defending against their bad faith pursuit of those claims and objections. Furthermore, upon Mr. Stretton's withdrawal from the case, counsel for Co-Executrices advised James Doherty, by letter dated September 28, 2022, of their intent to seek an award of attorneys' fees and costs for his relentless pursuit of meritless claims.

On January 9, 2023, the court granted, in part, a Motion for Summary Judgment filed by Co-Executrices, and dismissed James Doherty's $200,000.00 liquidated damages claim after determining it to be unenforceable under Pennsylvania law. Thereafter, on June 23, 2023, [the orphans'] court conducted a hearing on James Doherty's remaining claims and objections. By Adjudication dated June 30, 2023, the court dismissed in their entirety James Doherty's remaining claims and objections. No timely appeal followed with respect to the Adjudication, including the issues decided in the Opinion and Order granting partial summary judgment.

On July 27, 2023, Co-Executrices filed the Petition for Award of Attorneys' Fees and Costs, seeking an award by the court pursuant to 42 Pa.C.S. §§ 2503(7), and (9) [as] well as the court's

- 2 -

equitable powers for the reimbursement of legal fees and costs incurred in defending against James Doherty's bad faith pursuit of meritless claims and objections. Co-Executrices' [Petition] ultimately proceeded to a hearing before the court on May 29, 2024. By Order on March 5, 2024, [the orphans'] court scheduled a hearing on Co-Executrices Petition for May 29, 2024. Neither [Appellant] appeared before the court on May 29, 2024 to contest Co-Executrices' claim for fees. Nor, as reflected in the record, did either [Appellant] contact opposing counsel and/or the court to advise that they would not be attending the hearing. Neither [Appellant] provided a satisfactory excuse for their absence.

At the hearing's inception, James Doherty's prior counsel, Dennis C. Vondran, Jr., and his firm, Lamb McErlane memorialized the settlement agreement of Co-Executrices' claims against them. Thereafter, Co-Executrices introduced ample credible evidence substantiating the reasonableness of their request for attorneys' fees and costs.

At the hearing's conclusion, Co-Executrices requested and were granted leave to supplement the record with a bill of costs for the time and additional counsel fees incurred from May 19, 2024 through the date of the hearing. On June 10, 2024, as authorized by the court, Co-Executrices submitted into evidence documentation to support their claim for additional fees and costs in the amount of $8,945.70.

By Order dated June 21, 2024, based on the uncontroverted testimony and documentary evidence provided by Co-Executrices, which the court found wholly credible, [the orphans'] court granted Co-Executrices' [Petition]. The court entered an order awarding fees, jointly and severally, against [Appellants]. [The orphans'] court stated, as follows:

> The court finds that the conduct of [Appellants] in commencing these proceedings against [the Estate] and in commencing and pursuing the claim against the Estate was vexatious, arbitrary, dilatory and obdurate. The conduct of the litigation by James Doherty against the Estate is more fully described in this court's Opinion and Adjudication, dated June 30, 2023. This court observes that James Doherty, as the claimant, and Mary Lou Doherty, as his initial counsel, were aware at all times of the defects in the claims and engaged in obdurate, dilatory and vexatious

conduct both in the commencement of the proceedings and in their litigation tactics in pursuit of the claim. Moreover, the litigation tactics of the claimant and his counsel, including his claim to an unconscionable liquidated damages penalty of 50% of the purported purchase price of real estate; the production at trial of a purported lease agreement that contained obvious indicia of fraud, including that it was not stapled, that prior staples had been removed, that it contained inconsistent dates, that it contained a misspelling in the purported signature, and that it contained two pages labeled as page "1", which reflected different rental amounts, all support this court's conclusion that the claim filed in this matter and the litigation from its commencement and thereafter was arbitrary and vexatious. Therefore, this court awards to [the Estate] an amount equal to reasonable attorneys' fees incurred by the Estate which would not have been incurred but for the vexatious, arbitrary, dilatory and obdurate conduct of James Doherty, the claimant, and Mary Lou Doherty, his first attorney who filed the baseless claim and the initial pleadings.

Neither James nor Mary Lou Doherty, filed a motion for reconsideration of the court's June 21, 2024 Order. Instead, on July 19, 2024, James Cunilio, [Esq.], entered his appearance and filed a notice of appeal on behalf of [Appellants] from the court's June 21, 2024 Order.

Amended 1925(a) Opinion, 9/23/24, at 1-5 (footnotes and unnecessary capitalization omitted).

Appellants present the following questions for our review:

A. Did the trial court have to "guess" at the issues it needed to address in [Appellants'] six Issues contained in their "Concise Statement of Matters Complained of on Appeal" when [Appellants] included in their Statement a "Background" stating it was not to be considered as "Issues" by the trial court, when the "Background" cited "pertinent authorities and record citation" to explain why the Statement has identified errors and when the trial court's Opinion only addressed the six Issues identified in [Appellants'] Statement?

> B. Did the trial court commit error as a matter of law and abuse its discretion by misapplying [42 Pa.C.S.A. § 2503] in awarding [attorneys'] fees in the amount of $67,126.44 in favor of the Estate and against [Appellants] when it found that they had engaged in conduct that was arbitrary[,] vexatious, obdurate and dilatory and that there was an "indicia of fraud" in commencing and pursuing James Doherty's claim for liquidated damages and back rent pursuant to James Doherty's claims that [there] were breaches of an Agreement of Sale and a Lease[?]

Appellant's Brief, at 5 (lower court answers and unnecessary capitalization omitted).

In their first issue, Appellants aver they did not waive the 6 issues raised in their 1925(b) statement by including a section of "Background" information because doing so did not prevent the orphans' court from addressing the issues, and nothing in the record indicates Appellants "did anything to attempt to thwart the appellate process." Appellants' Brief, at 17 (internal quotation marks omitted).

Pursuant to our Rules of Appellate Procedure, an appellant "shall set forth only those errors that the appellant intends to assert" in the concise statement of matters complained of on appeal. Pa.R.A.P. 1925(b)(4)(i). Moreover, an appellant's 1925(b) statement "shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge[,]" and it "should not be redundant or provide lengthy explanations as to any error." Pa.R.A.P. 1925(b)(4)(ii), (iv). Any issues "not raised in accordance with the provisions of [Pa.R.A.P. 1925(b)(4)] are waived." Pa.R.A.P. 1925(b)(4)(vii).

Contrary to Appellants' contentions, the orphans' court did not find the 6 issues raised in Appellants' 1925(b) statement waived on this basis. Rather, the court merely declined to analyze the 25 paragraphs of "Background" information included in Appellants' 1925(b) statement. *See* Amended 1925(a) Opinion, 9/23/24, at 7. As the orphans' court explained:

> [Appellants'] 1925(b) Statement consists of 6 pages, and is broken down into two sections. The first section, labeled "A. Matters Complained Of On Appeal," contains [6] paragraphs of alleged errors by the court. The 1925(b) Statement's second section, labeled "B. Background Only To Apprise This Honorable Court Of The Context Of Matters Complained Of On Appeal And Are Not To Be Considered As Issues," consists of an additional 25 paragraphs. [Appellants'] inclusion of this second lengthy section violates both the purpose and express language of Pa.R.A.P. 1925(b). The inclusion of an additional 25 paragraphs, which [Appellants] characterize not as issues for review, but rather, information to provide "context," is not appropriate under Pa.R.A.P. 1925(b)(4)(ii), (iv), or (vii) which expressly prohibit lengthy explanations. This court is left in the untenable position of having to guess as to whether it is required to conduct an analysis of this alleged 'background.' [Appellants'] 1925(b) Statement does not comply with Pa.R.A.P. 1925(b) and this court cannot and need not address the 25 paragraphs included in the second section of [Appellants'] 1925(b) Statement.

*Id.*, at 6-7 (unnecessary capitalization omitted).

We discern no error. Accordingly, Appellants' first issue is meritless, and they are not entitled to relief.

In their second issue, Appellants challenge the orphans' court's award of attorneys' fees and costs incurred by the Estate in defending the matter.

Our Judicial Code permits a court to award "a reasonable counsel fee … as a sanction against another participant for dilatory, obdurate or vexatious

conduct during the pendency of a matter." 42 Pa.C.S.A. § 2503(7). Similarly, a court may award attorneys' fees if "the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith." 42 Pa.C.S.A. § 2503(9). "Any award of counsel fees under these statutory provisions, however, must be supported by a trial court's specific finding of such conduct." *In re Estate of Simpson*, 305 A.3d 176, 187 (Pa. Super. 2023) (citation omitted). "An opponent's conduct has been deemed to be arbitrary within the meaning of the statute if such conduct is based on random or convenient selection or choice rather than on reason or nature." *In re Barnes Foundation*, 74 A.3d 129, 136 (Pa. Super. 2013) (citation and internal quotation marks omitted).

> A party has acted in bad faith when he files a lawsuit for purposes of fraud, dishonesty, or corruption. A party's conduct has been vexatious if he brought or continued a lawsuit without legal or factual grounds and if the suit served only to cause annoyance. Obdurate is defined, *inter alia*, as "unyielding; stubborn."
>
> ***
>
> The trial court has great latitude and discretion with respect to an award of attorneys' fees pursuant to a statute. In reviewing a trial court's award of attorneys' fees, our standard of review is abuse of discretion. If there is support in the record for the trial court's findings of fact that the conduct of the party was obdurate, vexatious or in bad faith, we will not disturb the trial court's decision.
>
> It is the burden of the party seeking counsel fees to prove the existence of one of the statutory conditions. Moreover, we note that it is not the intent of Section 2503 to punish all those who initiate actions which ultimately fail, as such a course of action would have a chilling effect upon the right to raise a claim. Rather, the aim of the rule permitting the recovery of counsel fees is to

- 7 -

sanction those who knowingly raise, in bad faith, frivolous claims which have no reasonable probability of success, for the purpose of harassing, obstructing or delaying the opposing party.

**Simpson**, 305 A.3d at 185-86 (citations and brackets omitted).

Our standard of review of an orphans' court's findings is deferential:

When reviewing a decree entered by the [o]rphans' [c]ourt, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the [o]rphans' [c]ourt sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.

However, we are not constrained to give the same deference to any resulting legal conclusions.

**In re Estate of Harrison**, 745 A.2d 676, 678 (Pa. Super. 2000) (internal citations and quotation marks omitted). The decision of the orphans' court "will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law." **In re Estate of Whitley**, 50 A.3d 203, 206 (Pa. Super. 2012).

"An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused." **Silver v. Pinskey**, 981 A.2d 284, 291 (Pa. Super. 2009) (*en banc*) (citation omitted). "Our scope of review is also limited: we determine only whether the court's findings are based on competent and

credible evidence of record." *In re Estate of Karschner*, 919 A.2d 252, 256 (Pa. Super. 2007) (citation omitted).

Appellants aver the orphans' court erred as a matter of law and abused its discretion by awarding attorneys' fees upon finding that Appellants "engaged in conduct that was arbitrary, vexatious, obdurate and dilatory in commencing and pursuing Doherty's claims and in the absence of any finding that [Appellants] did this for the sole purpose of annoying the Estate." Appellants' Brief, at 20-21.

"In order to preserve a claim on appeal, a party must lodge a timely objection. Failure to raise such objection results in waiver of the underlying issue on appeal." *In re Estate of Anderson*, 317 A.3d 997, 1003 (Pa. Super. 2024) (citations omitted); *see* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal").

Appellants concede that they failed to appear at the fee petition hearing held on May 29, 2024. *See* Appellants' Brief, at 42. Appellants purport not to raise any issue concerning the reasonableness of the fee award or the evidentiary rulings upon which the award is based, but rather, only dispute the orphans' court's determination, memorialized in its June 21, 2024 order, that Appellants engaged in arbitrary, vexatious, obdurate and dilatory conduct. *See id.*, at 21. However, attempting to frame their issue on appeal in these terms, presumably to avoid waiver, does not afford Appellants relief. The orphans' court determined that it would grant the Estate's petition at the

conclusion of the May 29th hearing, which Appellants necessarily failed to raise an objection to by failing to appear. **See** N.T. Petition for Counsel Fees Hearing, 5/29/24, at 74. Likewise, the court's determination was based upon the evidence presented by Appellees at the hearing, to which Appellants did not object because they did not appear. **See id.** at 71-74.

Appellants also did not seek reconsideration of the orphans' court's award of attorneys' fees and costs, although if they had exercised that option, they would have preserved their right to seek review in this Court. **See Estate of Goodman v. Goodman**, 304 WDA 2020, 240 A.3d 202 (Table) (Pa. Super. Filed August 26, 2020) (unpublished memorandum).[1]  The Pennsylvania Rules of Orphans' Court Procedure provide, in pertinent part:

**Rule 8.2. Motions for Reconsideration**

(a) By motion, a party may request the court to reconsider any order that is final under Pa.R.A.P. 341(b) or 342, or interlocutory orders subject to immediate appeal under Pa.R.A.P. 311, so long as the order granting reconsideration is consistent with Pa.R.A.P. 1701(b)(3).

(b) Upon a motion to do so, a court may reconsider an interlocutory order at any time.

Pa.R.O.C.P. Rule 8.2.

_____

[1] Pursuant to Pa.R.A.P. 126(b), we may rely on an unpublished memorandum issued after May 1, 2019 for its persuasive value.

- 10 -

The orphans' court correctly determined that Appellants failed to preserve any challenge to its finding of arbitrary, vexatious, obdurate, and dilatory conduct based on the following:

> By failing to appear at the May 29, 2024 hearing and failing to lodge any objections, [Appellants] have lost the opportunity to object to the entirety of Co-Executrices' testimonial and documentary evidence supporting an award of fees and costs. **See** Pa.R.E. 103(a) (Timely objection required to preserve evidentiary issue.); **see also**, Pa.R.C.P. 218(c), *note* (Party that failed to appear bears burden of demonstrating satisfactory excuse for such failure.).
>
> Appellants also failed to seek reconsideration of the court's June 21, 2024 award, as permitted by Pennsylvania Orphans' Court Rule 8.2, and thus failed to preserve any issues as to the May 29, 2024 hearing, as well as the court's admission and consideration of Co-Executrices' testimonial and documentary evidence, including but not limited to that which was admitted at the hearing and thereafter, without objection. **See** Pa.R.A.P. 302. Issues cannot be raised for the first time on appeal. Contrary to the Rules of Appellate procedure, that is precisely what [Appellants] attempt to do — raise issues on appeal that were never previously raised and have not been preserved.

Amended 1925(a) Opinion, 9/23/24, at 8-9 (footnotes and unnecessary capitalization omitted).

Moreover, the orphans' court's finding of arbitrary, vexatious, obdurate and dilatory conduct as required by 42 Pa.C.S.A. §§ 2503(7) and (9) is amply supported by the evidence of record. "This Court has upheld findings of vexatious conduct based on a continuing pattern which demonstrated that the litigation had no purpose but annoyance and where the party was clearly aware that his pleading lacked any legal basis and yet pursued his claim regardless." **Simpson**, 305 A.3d at 187 (citation omitted). The orphans' court

comprehensively detailed the pervasive, continuous conduct Appellants engaged in throughout the matter that led to its imposition of fees and costs:

> From the commencement of this litigation, [Appellants'] haphazard pursuit of meritless claims was arbitrary, vexatious, and in bad faith. Not only did they delay in filing their claim for nearly a year, but once filed[,] it became readily apparent that James Doherty's claim, filed by Mary Louise Doherty, seeking $210,350.00 in liquidated damages was unsupported factually and legally. Notwithstanding repeated good faith attempts by Co-Executrices' counsel to resolve this matter, James and Mary Lou Doherty, who was disbarred in June 2022, persisted in pursuit of their groundless claims. The record contains numerous muddled and non-conforming pleadings filed by [Appellants] and/or counsel retained on their behalf, including a statement of claim consisting of over 70 pages and including numerous irrelevant documents, such as documents related to the estate of [Decedent's] husband, who had predeceased her.
>
> On January 9, 2023, this court dismissed James Doherty's claim for $200,000.00 in liquidated damages, determining that the clause of the underlying alleged agreement of sale — which sought to impose a penalty of $200,000, representing 50% of the purported purchase price of the real estate — was unconscionable, unenforceable and contrary to well-settled Pennsylvania law. Thereafter, [Appellants] persisted in their remaining claims and objection for approximately $10,350.00 in alleged unpaid rent based upon questionable documents. The purported lease agreement was for a rental unit rented by [Decedent's] son. A prior lease had been signed by [Decedent's] son and by her late husband in 2014. Among the many perplexing issues related to this purported lease, no explanation was provided as to why [Decedent] would have signed as tenant, rather than her son signing the lease, nor why the lease would have been rewritten or renewed in 2015, nor why the rent would have doubled, nor why [Decedent], if she did sign the re-written lease, would have dated her signature in 2017.
>
> When this matter ultimately proceeded to trial on those remaining claims and objections, the court was constrained to exclude the primary material evidence that James Doherty relied upon, namely the purported lease agreement offered as Exhibit C-7. The court sustained Co-Executrices' objection as to the authenticity of

- 12 -

Exhibit C-7 based upon its numerous inconsistencies and patently apparent and concerning indicia of fraud, including the removal of the staples indicating that at some time or times the document pages were not maintained together as one entire document, the two differing pages labeled as ["page 1"] which included differing rent amounts, the misspelling of [Decedent's] name, "Virginia," [in] the signature alleged to be hers, [and] loose, mislabeled and misdated pages.

This court made the following specific findings of fact in its Adjudication dated June, 30, 2023, [concerning] the purported lease offered in evidence by James Doherty as Exhibit C-7:

a.      Although the handwriting expert testified that, in her opinion to a reasonable degree of professional certainty, the signature on the page of the document labeled as page 11 of 12 was a "wet" ink signature and was consistent with other known signatures of [Decedent,] counsel for [Appellees] raised considerable areas of dispute and concern about the expert opinion. In particular, the expert conceded that in the questioned signature on page 11 of Exhibit C-7, [Decedent] misspelled her first name as "Virgina" and also that in the questioned signature, the entire signature was written at the line with some elements crossing below the signature line, whereas in all or nearly all of the other known signatures of [Decedent] her first name was spelled correctly and the signatures were placed above the signature line. The expert noted one other signature where the third "I" in Virginia appeared as a beginning stroke and a dot, but not a complete letter "I," however in no other known signature was the third letter "I" and the dot over it completely omitted, as in the questioned signature on the document labelled as Exhibit C-7.

b.      The original of the document labeled as Claimant's Exhibit C-7, as presented to the Court on June 28, 2023, contains 13 pages, which bear the marks of two staples, both of which have been removed. The handwriting expert testified that this was the condition of the document when she received it in April of 2022 for her review. Not only were the pages not stapled at the time of the hearing nor at the time of their review by the expert, but the document appears with two different pages labeled as page "1," one of which is labeled at the bottom as "Page 1 of 2" and one

of which is labeled at the bottom as "Page 1 of 12." The first page 1, labeled as Page 1 of 2, had only one set of staple holes, while the other pages appear to have two sets of staple holes. Both of the pages labeled as page "1" have a title of "Apartment Lease" and both include language stating that the agreement is a "modification of an original lease" and both refer to a lease for the premised located at 256 Montgomery Avenue, Haverford, PA, Apartment #9. However, one purports to be a lease at a monthly rental amount of $2,400.00, and one purports to be a lease at a monthly rental amount of $2,200.00. No explanation was provided as to why two page ones were prepared with differing rental amounts with respect to this purported lease agreement.

c.      No evidence was offered to establish that any lease agreement, at any specific rental amount, was actually attached to the page labeled as page 11 of 12, at the time when it is alleged that [Decedent's] signature was placed on that page, or that [Decedent] at any time read or adopted the language in the preceding 10 or 11 pages of the Apartment lease.

d.      Neither the expert witness nor any other party offered any testimony regarding the initials that appear to be written on the pages of the document labeled as Exhibit C-7.

e.      The page on which the purported signature of [Decedent] appears includes the hand written date "5-14-17", whereas the two first pages of the purported Apartment Lease both include the date September 1, 2015. No evidence was offered to establish any reason for the inconsistent dates on the first page(s) of the document and on the signature page that purports to be the signature page of the same document.

f.      No signature of a landlord appears on the purported Apartment Lease offered as Exhibit C-7.

g.      No signature of [Decedent] appears on the required Lead Paint disclosure addendum to the lease, which was offered as part of Exhibit C-7 and labeled as page 12 of

12.

    h.     Based upon the numerous inconsistencies in this document, including the removal of the staples indicating that at some time or times the document pages were not maintained together as one entire document, including the misspelling of the name "Virginia" in the signature, including the two loose pages labeled as page 1, one of which was labeled as page 1 of 2 and one of which was labeled as page 1 of 12, both of which bore the same date and refer to the same apartment, and including the different date that appears on the two versions of the first page (September 1, 2015) and the date that appears next to the signature (5-14-17), this court concluded that the Claimant has not established that [Decedent] signed an Apartment Lease and was obligated to pay the rent with respect to Apartment #9 at 256 Montgomery Avenue Haverford, Pennsylvania, which was occupied by her son, Richard London.

    i.     Based upon the evidence presented at trial, this court cannot conclude that the misspelled signature of [Decedent] on Exhibit C-7 is established to be her authentic signature. Moreover, even if the court were to conclude that the signature on this one page, labeled as page 11 of 12, is genuine, the inconsistencies and indicia of fraud with respect to this collection of pages labeled as Exhibit C-7 are so numerous and concerning, that this court cannot conclude that this is an authentic document nor that [Decedent] agreed to either of the two purported Apartment lease agreements.

Based upon these factual findings, this court expressly concluded, in its Adjudication dated June 30, 2023, that there were "inconsistencies and indicia of fraud" that were "so numerous and concerning" that the document was not authenticated to be a document signed by [Decedent], and the document was excluded from evidence. This June 30, 2023 Adjudication was final and appealable and was not appealed.

Even after the court's Adjudication of this matter, the record demonstrates Mary Louise [Doherty's] bad faith attempts to dodge service by Co-Executrices of the Petition for and Award of Attorneys' Fees and Costs. When the hearing on Co-Executrices' Petition was conducted by the court, despite ample notice,

- 15 -

[Appellants] failed to appear or advise the court or opposing counsel of their intended absence or satisfactory excuse for failing to attend. ***See Pelissero v. Seraly***, 247 A.3d 433, 438 (Pa. Super. Ct. 2021) (Holding imposition of sanctions warranted based on party's failure to appear at hearing). [Appellants'] conduct, both in commencing these proceedings by filing the claim, and throughout the entirety of this litigation unequivocally demonstrates the requisite arbitrary, vexatious, and bad faith conduct contemplated by Section 2503(9) and the requisite dilatory, obdurate and vexatious conduct during the pendency of the matter contemplated by Section 2503(7) of Title 42. The record before the court, including its prior hearings, the hearing on May 29, 2024, and the court's Opinions and Adjudication, amply demonstrate the justification for the court's imposition of attorneys' fees and costs as a sanction for [Appellants'] vexatious conduct and bad faith pursuit of frivolous claims.

Amended 1925(a) Opinion, 9/23/24, at 11-15 (unnecessary capitalization omitted).

In our review of the record, we discern no error. Accordingly, Appellants are not entitled to relief on their second issue.

For the foregoing reasons, we affirm the orphans' court order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/10/2025